# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

ERIC ESSHAKI, as candidate for
United States Congress and in his
Individual capacity,

              Plaintiff,

    vs.

GRETCHEN WHITMER, Governor of
Michigan, JOCELYN BENSON, Secretary
of State of Michigan, and JONATHAN
BRATER, Director of the Michigan
Bureau of Elections, in their official
capacities,

              Defendants.

Case No.

Hon.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Eric Esshaki, in his capacity as a candidate for United States House of Representatives in Michigan's 11th congressional district and as a registered voter in Michigan, files this Complaint against Defendants Gretchen Whitmer, Governor of Michigan, Jocelyn Benson, Secretary of State of Michigan, and Jonathan Brater, Director of the Michigan Bureau of Elections, in their official capacities (collectively "Defendants").

### Summary of this Civil Action

1.    Eric Esshaki ("Esshaki") alleges that Michigan's ballot access procedure in combination with Governor Whitmer's March 24, 2020 Executive

Order No. 2020-21 (the "Stay-home Order"), violates rights guaranteed to him by the First and Fourteenth Amendments of the United States Constitution.

2.    Esshaki is running for Congress in Michigan's 11th congressional district and filed his statement of candidacy with the Federal Election Commission on October 31, 2019. Esshaki is a Registered Nurse and he is currently a practicing attorney.

3.    Pursuant to Michigan election law, to appear on the official primary ballot, Esshaki and other party-affiliated candidates are required to file with the Michigan Secretary of State's office by April 21, 2020 (the "Filing Deadline" or "Deadline"), a nominating petition to include one-thousand and up to two-thousand signatures of qualified and registered electors residing in the congressional district.

4.    Pursuant to Governor Whitmer's Stay-home Order, and in light of a global pandemic, Michigan residents are required to stay in their homes until at least April 13, 2020. All public gatherings are prohibited. Additionally, workers who are deemed essential and permitted to leave their homes must maintain a distance of six feet from other people.

5.    Esshaki, his campaign staff, and several volunteers were diligently collecting signatures prior to the issuance of the Stay-home Order. Although Esshaki has collected a substantial number of signatures from qualified and registered

electors, he has not yet obtained enough signatures to meet the statutory threshold to have his name placed on the August 4, 2020 primary ballot.

6.      Through the enforcement of Michigan election law in conjunction with the Stay-home Order, Defendants have effectively precluded Esshaki and other similarly situated Republican candidates throughout the state from qualifying to have their name on the August 4, 2020 primary ballot.

7.      Defendants have indicated that the current filing deadline on April 21, 2020 will be strictly enforced, notwithstanding that they have the power to extend the Deadline or decrease the number of signatures required, and notwithstanding that Defendant Benson has already closed all Secretary of State offices until April 23, 2020 and has indicated that the local May, 2020 election will be conducted by mail, and not in person.

8.      Defendants' refusal to extend the Deadline places candidates in the position of either having to break the law and cause electors to break the law under threat of criminal prosecution, or forgo running for public office altogether.

9.      Esshaki seeks prospective declaratory relief and injunctive relief as necessary to ensure his placement on Michigan's August 4, 2020 primary ballot. In support of this Complaint, Esshaki submits his Declaration (Exhibit A).

## The Parties, Jurisdiction, and Venue

10.    Esshaki resides in Michigan and files suit in his capacity as candidate for Congress and as a registered voter in Michigan. Esshaki has filed his Statement of Candidacy with the Federal Election Commission. Further, Esshaki is a registered voter in Birmingham, Michigan and he has consistently voted in past primary and general elections.

11.    Defendant Gretchen Whitmer is the Michigan Governor. Governor Whitmer has authority over the enforcement of the Michigan Election Code during a state of emergency and otherwise. Esshaki asserts claims against Governor Whitmer in her official capacity. Governor Whitmer's official address is P.O. Box 15282, Lansing, MI 48901.

12.    Defendant Jocelyn Benson is the Michigan Secretary of State. Secretary Benson is the State's chief elections official and has ultimate authority over the enforcement of the Michigan Election Code, including the provisions challenged herein. Esshaki asserts his claims against Secretary Benson in her official capacity only. Secretary Benson's official address is 430 W. Allegan, Lansing, Michigan 48933.

13.    Defendant Jonathan Brater is the Director of the Michigan Bureau of Elections. Director Brater accepts and reviews candidate petition filings, assists county and local election officials with their administrative duties, and administers

the State's electoral process and Campaign Finance Act. Esshaki asserts his claims against Director Brater in his official capacity only. Director Brater's official address is Bureau of Elections, 430 W. Allegan, Lansing, Michigan 48933.

14.     Venue is proper in this Court because Esshaki is a resident of Michigan, and because the Defendants are state officials who maintain offices throughout the State of Michigan. *See Bay County Democratic Party v. Land*, 340 F.Supp.2d 802 (E.D. Mich. 2004). This Court has personal jurisdiction over the Defendants because they are public officials of the State of Michigan and they are residents of Michigan. This Court is a proper venue for this civil action under 28 U.S.C. 1391.

15.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because Esshaki's claims arise under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

16.     Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

## General Allegations

17.     Esshaki is a Republican candidate for Congress in Michigan's 11th congressional district.

18.     On October 31, 2019, Esshaki filed his "statement of candidacy" with the Federal Election Commission ("FEC").

19.     Esshaki has hired campaign staff and has been diligently campaigning since October 2019. In January 2020, Esshaki was recognized by the National Republican Congressional Committee for successfully organizing his campaign and demonstrating that he has the potential to win in the general election this November.

20.     Pursuant to Michigan election law, to appear on the official primary ballot, Esshaki and other party-affiliated candidates are required to file with the Michigan Secretary of State's office by April 21, 2020, a nominating petition with at least one-thousand signatures and up to two-thousand signatures of qualified and registered electors residing in the congressional district. M.C.L. §§ 168.133; 168.544(f).

21.     Esshaki and his campaign team implemented a plan to collect the required number of signatures early on in his campaign.

22.     Esshaki, his campaign team, and several volunteers and supporters have been working diligently, and have already collected nearly seven hundred (700) valid signatures.

23.     On or around March 15, 2020, President Trump rolled out his "15 days to slow the spread" initiative (the "Initiative"). This Initiative, which was recently extended to April 30, 2020, asks people to practice social distancing and take other measures to prevent the spread of the novel SARS-CoV-2 virus ("Covid-19").

24.     To comply with this Initiative and protect Michigan's citizens, Esshaki and his campaign postponed some of its efforts to collect signatures.

25.     On March 23, 2020, in response to the unprecedented Covid-19 pandemic, which has disrupted nearly every aspect of American life, Governor Whitmer issued Executive Order 2020-21 (the "Stay-home Order" or the "Order") (Exhibit B). The Order went into effect On March 24, 2020 and remains in effect until at least April 13, 2020.

26.     Based on information and belief, the Order will likely be renewed and extended for weeks beyond April 13, 2020 and more importantly, beyond the April 21 Deadline.

27.     Whitmer's Stay-home Order is to be construed broadly. The Order makes it a misdemeanor for a person to leave his home or residence unless that person is a worker "necessary to sustain or protect life or to conduct minimum basic operations" ("Essential Worker").

28.     The Stay-home Order further requires that Essential Workers who leave their homes must maintain social distancing standards by remaining at least six feet away from others.

29.    The Stay-home Order does not create an exception for candidates or campaign staff.[1]

30.    On or around March 25, 2020, staff from the Michigan Secretary of State informed Esshaki's campaign staff that the April 21, 2020 deadline to obtain and submit the required signatures would be strictly enforced.

31.    The Michigan Bureau of Elections ("BOE") posted the following notice on its website, which has remained on its website as of the filing of this Complaint:

> "The Bureau of Elections has received inquiries regarding the ability of petition gatherers to collect and submit signature petitions, including candidates with an April 21 filing deadline. As of now, all statutory requirements remain in place. Evaluation of the applicability of statutory deadlines and signature requirements in light of COVID-19 is ongoing, and we will share an update on any changes to requirements and procedures as soon as they are announced."

32.    The Defendants' enforcement of the deadline is inconsistent with other actions the Secretary of State has taken in these unprecedented times. Indeed, the Secretary of State offices are closed and not expected to reopen until April 23, 2020—two days after the filing deadline. (Exhibit C). Additionally, the Secretary of State has indicated that it will conduct local elections in May 2020 through mail ballots, and not in person.

---

[1] Even if the Stay-home Order created an exception for candidates, it would be impossible to collect signatures from supporters and other electors without causing those individuals to violate the Order.

33.   Similarly, on March 25, 2020, recognizing the severity of this pandemic, Governor Whitmer issued Executive Order 2020-22, extending the canvassing deadline of the state's primary election to April 24, 2020.

34.   These extraordinary measures underscore the challenges we face as a state and nation during this pandemic. There is, under these unprecedented circumstances, absolutely no compelling or legitimate state interest to enforce the Filing Deadline, and to do so is unconstitutional.

35.   Collecting signatures is a time-consuming process, which requires close contact with electors who reside in the congressional district.

36.   Governor Whitmer's Stay-home Order has made it impossible for candidates to obtain the required number of elector signatures by April 21, 2020, the deadline imposed under M.C.L. section 168.133.

37.   The enforcement of that Deadline under these unprecedented circumstances, considering the Stay-home Order, is unconstitutional because it imposes signature requirements upon Esshaki and simultaneously strips him of the ability to meet those requirements.

38.   This effectively prevents Esshaki, through no fault of his own, from getting his name on the ballot and running for office in a meaningful way.

39.   Over the last several months, Esshaki has expended countless hours and other resources campaigning. The enforcement of the Deadline severely injures

Esshaki and his supporters, and continues to impose severe burdens on him because if it is enforced, he will not be able to run for office, or, alternatively, he will be required to spend large sums of money in an attempt to acquire signatures through a mail campaign when there is no evidence that such a strategy would yield even one additional signature.

40.    Esshaki, as well as his supporters, will be further injured and will suffer irreparable harm to their voting, speech, and associational rights because they will not be able to vote for the candidate of their choice if Esshaki's name is not permitted to be on the ballot.

41.    Based on information and belief, there are several Republican candidates in various congressional districts throughout the state who are challenging Democrat incumbents and have not yet obtained the required number of signatures to have their names placed on the August primary ballot.

42.    This is particularly true in two of Michigan's most contested congressional districts: the 8th and 11th. Both of these districts are currently held by Democrats who, with the advantage of being incumbents, were able to obtain the required number of signatures before the Order went into effect.

43.    Defendants' enforcement of the deadline will leave voters like Esshaki forced to vote for the incumbent Democrat in his congressional district or not vote

at all, and will serve to subvert our constitutional democracy by arbitrarily restricting their right to support and vote for the candidate of their choice.

## COUNT I – VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHTS
### (M.C.L. §§ 168.133; 168.544(f) are unconstitutional as applied to Esshaki as a candidate)

44.    The preceding Paragraphs 1 – 43 are hereby incorporated by reference.

45.    Considering the existence of an unprecedented viral pandemic and Governor Whitmer's Stay-home Order, the application and enforcement of M.C.L. sections 168.133 and 168.544(f) is unconstitutional as applied to Esshaki because the enforcement of the statutes would require Esshaki to collect and submit one-thousand signatures and up to two-thousand signatures by April 21, 2020, while simultaneously ordering Esshaki to not leave his home.

46.    Defendants' actions effectively prohibit Esshaki from getting the required number of signatures, and in turn, prevent him from having his name placed on the August 4, 2020 primary ballot, which violates Esshaki's freedom of speech and association, equal protection, and due process rights as guaranteed by the First and Fourteenth Amendments, and as enforced by 42 U.S.C. § 1983.

47.    Defendants' enforcement of the statutory requirements in conjunction with the Stay-home Order make it virtually impossible for Esshaki to get his name on the ballot without causing both himself and his supporters to violate the Stay-

home Order and face potential criminal charges. Under the circumstances, these requirements are burdensome, unreasonable, and are not narrowly tailored to meet any compelling or legitimate state interest.

48.    Moreover, these requirements are being enforced by partisan Democratic officials in an obviously partisan manner to provide Democratic incumbents across the state a significant advantage over their challengers.

49.    These violations immediately injure Esshaki and will continue to injure Esshaki in the future in the absence of relief from this court.

## COUNT II – VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHTS
### (M.C.L. §§ 168.133; 168.544(f) are unconstitutional as applied to Esshaki as a registered voter)

50.    The preceding Paragraphs 1 – 49 are hereby incorporated by reference.

51.    Esshaki is a registered voter. He has consistently voted in past primary and general elections and has a constitutional right to effectively cast his vote.

52.    The unconstitutional exclusion of Esshaki's candidacy through the unconstitutional enforcement of the Deadline and signature requirements deprives him of an effective choice at the ballot, is wholly unreasonable, and fails to meet any compelling or legitimate state interest.

53.    Defendants' enforcement of the deadline hinders Esshaki's opportunity to choose among competing alternatives at the ballot, which would otherwise exist.

54.    Esshaki is immediately injured by these unconstitutional acts.

## Prayer for Relief

WHEREFORE, Esshaki respectfully requests that this Honorable Court enter a judgment in its favor and against Defendants and grant the following relief:

A.      Enter declaratory judgment holding that M.C.L. sections 168.133 and 168.544(f) are unconstitutional as applied to Esshaki in his capacity as a candidate for Congress and as a qualified voter;

B.      Enter a temporary restraining order and/or preliminary injunction, and permanent injunction, barring Defendants from enforcing the Deadline and/or signature requirements;

C.      Enter an order requiring Defendants to either extend the deadline, decrease the signature requirements, or place Esshaki's name on the ballot upon his filing of the nominating petition with fewer than the required number of signatures;

D.      Award attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.      Award such other relief as the Court deems just and proper.

Respectfully submitted,

LAW OFFICES OF GREGORY J. ROHL, P.C.

By: */s/ Gregory J. Rohl*
Gregory J. Rohl (P39185)
41850 W. Eleven Mile Rd, Suite 110
Novi, MI 48375
*Attorney for Plaintiff*

March 31, 2020

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ERIC ESSHAKI, as candidate for
United States Congress and in his
Individual capacity,

               Plaintiff,

vs.

GRETCHEN WHITMER, Governor of
Michigan, JOCELYN BENSON, Secretary
of State of Michigan, and JONATHAN
BRATER, Director of the Michigan
Bureau of Elections, in their official
capacities,

               Defendants.

Case No.

Hon.

---

## DECLARATION OF ERIC ESSHAKI

Pursuant to 28 U.S.C. 1746, I hereby declare as follows:

1.     I am a Republican candidate for Congress in Michigan's 11th congressional district.

2.     On October 31, 2019, I filed my "statement of candidacy" with the Federal Election Commission ("FEC").

3.     I have hired campaign staff and have been diligently campaigning since October 2019, and in January 2020, I was recognized by the National Republican Congressional Committee for successfully organizing my

1

campaign and demonstrating that I have the potential to win in the general election this November.

4.  Pursuant to Michigan election law, to appear on the official primary ballot, I and other party-affiliated candidates are required to file with the Michigan Secretary of State's office by April 21, 2020, a nominating petition with at least one-thousand signatures and up to two-thousand signatures of qualified and registered electors residing in the congressional district. M.C.L. §§ 168.133; 168.544(f).

5.  My campaign team and I implemented a plan to collect the required number of signatures early on in my campaign.

6.  My campaign team and I, along with several volunteers and supporters have been working diligently, and we have already collected nearly seven hundred (700) valid signatures.

7.  Collecting signatures is a time-consuming process, which requires close contact with electors who reside in the congressional district.

8.  On or around March 15, 2020, President Trump rolled out his "15 days to slow the spread" initiative (the "Initiative"). This Initiative, which was recently extended to April 30, 2020, asks people to practice social distancing and take other measures to prevent the spread of the novel SARS-CoV-2 virus ("Covid-19").

2

9.      To comply with this Initiative and protect Michigan's citizens, my campaign team and I postponed some of our efforts to collect signatures.

10.     On March 23, 2020, in response to the unprecedented Covid-19 pandemic, which has disrupted nearly every aspect of American life, Governor Whitmer issued Executive Order 2020-21 (the "Stay-home Order" or the "Order"). The Order went into effect On March 24, 2020 and remains in effect until at least April 13, 2020.

11.     Based on information and belief, the Order will likely be renewed and extended for weeks beyond April 13, 2020 and more importantly, beyond the April 21 Deadline.

12.     Whitmer's Stay-home Order is to be construed broadly. The Order makes it a misdemeanor for a person to leave his home or residence unless that person is a worker "necessary to sustain or protect life or to conduct minimum basic operations" ("Essential Worker").

13.     The Stay-home Order further requires that Essential Workers who leave their homes must maintain social distancing standards by remaining at least six feet away from others.

14.     The Stay-home Order does not create an exception for candidates or campaign staff.

3

15.    On or around March 25, 2020, staff from the Michigan Secretary of State informed my campaign staff that the April 21, 2020 deadline to obtain and submit the required signatures would be strictly enforced.

16.    The Michigan Bureau of Elections ("BOE") posted the following notice on its website, which has remained on its website as of the filing of this Complaint:

> "The Bureau of Elections has received inquiries regarding the ability of petition gatherers to collect and submit signature petitions, including candidates with an April 21 filing deadline. As of now, all statutory requirements remain in place. Evaluation of the applicability of statutory deadlines and signature requirements in light of COVID-19 is ongoing, and we will share an update on any changes to requirements and procedures as soon as they are announced."

17.    The Defendants' enforcement of the deadline is inconsistent with other actions they have taken in these unprecedented times pertaining to our election laws. Indeed, the Secretary of State offices are closed and not expected to reopen until April 23, 2020—two days after the filing deadline. Additionally, the Secretary of State has indicated that it will conduct local elections in May 2020 through mail ballots, and not in person. Further, Governor Whitmore postponed the canvassing elections until April 24, 2020.

18.    These extraordinary measures underscore the challenges we face as a state and nation during this pandemic.

4

19.    Governor Whitmer's Stay-home Order has made it impossible for candidates like me to obtain the required number of elector signatures by April 21, 2020, the deadline imposed under M.C.L. section 168.133.

20.    The enforcement of that Deadline under these unprecedented circumstances, considering the Stay-home Order, is unconstitutional because it requires me to obtain signatures by April 21, 2020, and simultaneously strips me of the ability to meet those requirements.

21.    This effectively prevents me, through no fault of my own, from getting my name on the ballot and running for office in a meaningful way.

22.    Over the last several months, I have expended countless hours and other resources campaigning. The enforcement of the Deadline severely injures me and, and continues to impose severe burdens on me because if it is enforced, I will not be able to run for office and will have lost a substantial amount of time and money, or, alternatively, my campaign and I will be required to spend large sums of money in an attempt to acquire signatures through a mail campaign when there is no evidence that such a strategy would yield even one additional signature.

23.    My supporters and I will be further injured and will suffer irreparable harm to our voting, speech, and associational rights because my name

will not appear on the ballot and we will not be able to vote for the candidate of our choice.

24.    Based on information and belief, there are several Republican candidates in various congressional districts throughout the state who are challenging Democrat incumbents and who have not yet obtained the required number of signatures to have their names placed on the August primary ballot.

25.    This is particularly true in two of Michigan's most contested congressional districts: the 8th and 11th. Both of these districts are currently held by Democrats who, with the advantage of being incumbents, are believed to have been able to obtain the required number of signatures before the Order went into effect.

26.    I declare under penalty of perjury, that the foregoing to true and correct.

Executed on this 31st day of March 2020 by:

X */s/ Eric Esshaki*
ERIC ESSHAKI

# EXHIBIT B

Whitmer - Executive Order 2020-21 (COVID-19)

OFFICIAL WEBSITE OF MICHIGAN.GOV

THE OFFICE OF
# GOVERNOR GRETCHEN WHITMER 

WHITMER / NEWS / EXECUTIVE ORDERS

# Executive Order 2020-21 (COVID-19)

**EXECUTIVE ORDER**

**No. 2020-21**

**Temporary requirement to suspend activities that are not necessary to sustain or protect life**

The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. Older adults and those with chronic health conditions are at particular risk, and there is an increased risk of rapid spread of COVID-19 among persons in close proximity to one another. There is currently no approved vaccine or antiviral treatment for this disease.

On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, I issued Executive Order 2020-4. This order declared a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended, MCL 30.401-.421, and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended, MCL 10.31-.33.

The Emergency Management Act vests the governor with broad powers and duties to "cop[e] with dangers to this state or the people of this state presented by a disaster or emergency," which the governor may implement through "executive orders, proclamations, and directives having the force and effect of law." MCL 30.403(1)-(2). Similarly, the Emergency Powers of the

Governor Act of 1945, provides that, after declaring a state of emergency, "the governor may promulgate reasonable orders, rules, and regulations as he or she considers necessary to protect life and property or to bring the emergency situation within the affected area under control." MCL 10.31(1).

To suppress the spread of COVID-19, to prevent the state's health care system from being overwhelmed, to allow time for the production of critical test kits, ventilators, and personal protective equipment, and to avoid needless deaths, it is reasonable and necessary to direct residents to remain at home or in their place of residence to the maximum extent feasible.

This order takes effect on March 24, 2020 at 12:01 am, and continues through April 13, 2020 at 11:59 pm.

Acting under the Michigan Constitution of 1963 and Michigan law, I order the following:

1. This order must be construed broadly to prohibit in-person work that is not necessary to sustain or protect life.

2. Subject to the exceptions in section 7, all individuals currently living within the State of Michigan are ordered to stay at home or at their place of residence. Subject to the same exceptions, all public and private gatherings of any number of people occurring among persons not part of a single household are prohibited.

3. All individuals who leave their home or place of residence must adhere to social distancing measures recommended by the Centers for Disease Control and Prevention, including remaining at least six feet from people from outside the individual's household to the extent feasible under the circumstances.

4. No person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations.

a.  For purposes of this order, workers who are necessary to sustain or protect life are defined as "critical infrastructure workers," as described in sections 8 and 9.

b.  For purposes of this order, workers who are necessary to conduct minimum basic operations are those whose in-person presence is strictly necessary to allow the business or operation to maintain the value of inventory and equipment, care for animals, ensure security, process transactions (including payroll and employee benefits), or facilitate the ability of other workers to work remotely.

Businesses and operations must determine which of their workers are necessary to conduct minimum basic operations and inform such workers of that designation, Businesses and operations must make such designations in writing, whether by electronic message, public website, or other appropriate means. Such designations, however, may be made orally until March 31, 2020 at 11:59 pm.

5.  Businesses and operations that employ critical infrastructure workers may continue in-person operations, subject to the following conditions:

a.  Consistent with sections 8 and 9, businesses and operations must determine which of their workers are critical infrastructure workers and inform such workers of that designation. Businesses and operations must make such designations in writing, whether by electronic message, public website, or other appropriate means. Such designations, however, may be made orally until March 31, 2020 at 11:59 pm. Businesses and operations need not designate:

1. Workers in health care and public health.

Q                                                              ✖

2. Workers who perform necessary government activities, as described in section 6.

3. Workers and volunteers described in section 9(d).

b.  In-person activities that are not necessary to sustain or protect life must be suspended until normal operations resume.

   c. Businesses and operations maintaining in-person activities must adopt social distancing practices and other mitigation measures to protect workers and patrons. Those practices and measures include, but are not limited to:

     1. Restricting the number of workers present on premises to no more than is strictly necessary to perform the business's or operation's critical infrastructure functions.

     2. Promoting remote work to the fullest extent possible.

     3. Keeping workers and patrons who are on premises at least six feet from one another to the maximum extent possible, including for customers who are standing in line.

     4. Increasing standards of facility cleaning and disinfection to limit worker and patron exposure to COVID-19, as well as adopting protocols to clean and disinfect in the event of a positive COVID-19 case in the workplace.

     5. Adopting policies to prevent workers from entering the premises if they display respiratory symptoms or have had contact with a person who is known or suspected to have COVID-19.

     6. Any other social distancing practices and mitigation measures recommended by the Centers for Disease Control.

6. All in-person government activities at whatever level (state, county, or local) that are not necessary to sustain or protect life, or to supporting those businesses and operations that are necessary to sustain or protect life, are suspended.

   a. For purposes of this order, necessary government activities include activities performed by critical infrastructure workers, including workers in law enforcement,

public safety, and first responders.

b. Such activities also include, but are not limited to, public transit, trash pick-up and disposal, activities necessary to manage and oversee elections, operations necessary to enable transactions that support the work of a business's or operation's critical infrastructure workers, and the maintenance of safe and sanitary public parks so as to allow for outdoor recreation.

c. For purposes of this order, necessary government activities include minimum basic operations, as described in section 4(b). Workers performing such activities need not be designated.

d. Any in-person government activities must be performed consistently with the social distancing practices and other mitigation measures to protect workers and patrons described in section 5(c).

7. Exceptions.

a. Individuals may leave their home or place of residence, and travel as necessary:

1. To engage in outdoor activity, including walking, hiking, running, cycling, or any other recreational activity consistent with remaining at least six feet from people from outside the individual's household.

2. To perform their jobs as critical infrastructure workers after being so designated by their employers. (Critical infrastructure workers who need not be designated under section 5(a) may leave their home for work without a designation.)

3. To conduct minimum basic operations, as described in section 4(b), after being designated to perform such work by their employers.

4. To perform necessary government activities, as described in section 6.

5. To perform tasks that are necessary to their health and safety, or to the health and safety of their family or household members (including pets). Individuals may, for example, leave the home or place of residence to secure medication or to seek medical or dental care that is necessary to address a medical emergency or to preserve the health and safety of a household or family member (including procedures that, in accordance with a duly implemented nonessential procedures postponement plan, have not been postponed).

6. To obtain necessary services or supplies for themselves, their family or household members, and their vehicles. *Individuals must secure such services or supplies via delivery to the maximum extent possible*. As needed, however, individuals may leave the home or place of residence to purchase groceries, take-out food, gasoline, needed medical supplies, and any other products necessary to maintain the safety, sanitation, and basic operation of their residences.

7. To care for a family member or a family member's pet in another household.

8. To care for minors, dependents, the elderly, persons with disabilities, or other vulnerable persons.

9. To visit an individual under the care of a health care facility, residential care facility, or congregate care facility, to the extent otherwise permitted.

10. To attend legal proceedings or hearings for essential or emergency purposes as ordered by a court.

11. To work or volunteer for businesses or operations (including both and religious and secular nonprofit organizations) that provide food, shelter, and other necessities of life for economically disadvantaged or otherwise needy individuals, individuals who need assistance as a result of this emergency, and people with disabilities.

     b. Individuals may also travel:

         1. To return to a home or place of residence from outside this state.

         2. To leave this state for a home or residence elsewhere.

         3. To travel between two residences in this state.

         4. As required by law enforcement or a court order, including the transportation of children pursuant to a custody agreement.

8. For purposes of this order, critical infrastructure workers are those workers described by the Director of the U.S. Cybersecurity and Infrastructure Security Agency in his guidance of March 19, 2020 on the COVID-19 response (available **here**). Such workers include some workers in each of the following sectors:

     a. Health care and public health.

     b. Law enforcement, public safety, and first responders.

     c. Food and agriculture.

     d. Energy.

     Q

     e. Water and wastewater. 

     f. Transportation and logistics.

     g. Public works.

h. Communications and information technology, including news media.

i. Other community-based government operations and essential functions.

j. Critical manufacturing.

k. Hazardous materials.

l. Financial services.

m. Chemical supply chains and safety.

n. Defense industrial base.

9. For purposes of this order, critical infrastructure workers also include:

a. Child care workers (including workers at disaster relief child care centers), but only to the extent necessary to serve the children or dependents of critical infrastructure workers as defined in this order. This category includes individuals (whether licensed or not) who have arranged to care for the children or dependents of critical infrastructure workers.

b. Workers at designated suppliers and distribution centers, as described below.

1. A business or operation that employs critical infrastructure workers may designate suppliers, distribution centers, or service providers whose continued operation is necessary to enable, support, or facilitate the work of its critical infrastructure workers.

2. Such suppliers, distribution centers, or service providers may designate workers as critical infrastructure workers *only* to the extent those workers are necessary to enable, support, or facilitate the work of the original operation's or business's critical infrastructure workers.

3. Designated suppliers, distribution centers, and service providers may in turn designate additional suppliers, distribution centers, and service providers whose continued operation is necessary to enable, support, or facilitate the work of their critical infrastructure workers.

4. Such additional suppliers, distribution centers, and service providers may designate workers as critical infrastructure workers *only* to the extent that those workers are necessary to enable, support, or facilitate the work of the critical infrastructure workers at the supplier, distribution center, or service provider that has designated them.

5. Businesses, operations, suppliers, distribution centers, and service providers must make all designations in writing to the entities they are designating, whether by electronic message, public website, or other appropriate means. Such designations may be made orally until March 31, 2020 at 11:59 pm.

6. Businesses, operations, suppliers, distribution centers, and service providers that abuse their designation authority shall be subject to sanctions to the fullest extent of the law.

c. Workers in the insurance industry, but only to the extent that their work cannot be done by telephone or remotely.

d. Workers and volunteers for businesses or operations (including both and religious and secular nonprofit organizations) that provide food, shelter, and other necessities of life for economically disadvantaged or otherwise needy individuals, individuals who need assistance as a result of this emergency, and people with disabilities.

e. Workers who perform critical labor union functions, including those who administer health and welfare funds and those who monitor the well-being and safety of union members who are critical infrastructure workers, provided that any administration or monitoring should be done by telephone or remotely where possible.

10. Nothing in this order should be taken to supersede another executive order or directive that is in effect, except to the extent this order imposes more stringent limitations on in-person work, activities, and interactions. Consistent with prior guidance, a place of religious worship, when used for religious worship, is not subject to penalty under section 14.

11. Nothing in this order should be taken to interfere with or infringe on the powers of the legislative and judicial branches to perform their constitutional duties or exercise their authority.

12. This order takes effect on March 24, 2020 at 12:01 am, and continues through April 13, 2020 at 11:59 pm.

13. The governor will evaluate the continuing need for this order prior to its expiration. In determining whether to maintain, intensify, or relax its restrictions, she will consider, among other things, (1) data on COVID-19 infections and the disease's rate of spread; (2) whether sufficient medical personnel, hospital beds, and ventilators exist to meet anticipated medical need; (3) the availability of personal protective equipment for the health-care workforce; (4) the state's capacity to test for COVID-19 cases and isolate infected people; and (5) economic conditions in the state.

14. Consistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor.



Given under my hand and the Great Seal of the State of Michigan.

## RELATED CONTENT

Executive Order 2020-30 (COVID-19)

Executive Order 2020-29 (COVID-19)

Executive Order 2020-28 (COVID-19)

Executive Order 2020-25 (COVID-19)

Executive Order 2020-26 (COVID-19)

Executive Order 2020-27 (COVID-19)

Executive Order 2020-24 (COVID-19)

Executive Order 2020-23 (COVID-19)

Executive Order 2020-22 (COVID-19)

Executive Order 2020-20 (COVID-19)

Executive Order 2020-17 (COVID-19)

Executive Order 2020-19 (COVID-19)

Executive Order 2020-18 (COVID-19)

Executive Order 2020-16 (COVID-19)

Executive Order 2020-14 (COVID-19)

Executive Order 2020-15 (COVID-19)

Executive Order 2020-13 (COVID-19)

Executive Order 2020-10 (COVID-19)

Executive Order 2020-11 (COVID-19)

Executive Order 2020-09 (COVID-19) - Rescinded



**MICHIGAN.GOV HOME**
**ADA**
**MICHIGAN NEWS**
**POLICIES**

**COPYRIGHT 2020 STATE OF MICHIGAN**

# EXHIBIT C



STATE OF MICHIGAN
JOCELYN BENSON, SECRETARY OF STATE
DEPARTMENT OF STATE
LANSING

# Frequently Asked Questions
### Regarding Secretary of State services during the coronavirus outbreak

To slow the spread of the coronavirus, all Secretary of State offices are temporarily closed as of Tuesday, March 24, until further notice. In coordination with Governor Whitmer's administration, we will continue to rely on the guidance of public health officials to determine when we can reopen Secretary of State offices. Many transactions can be completed without a branch visit by going online. Late fees will be waived during this period.

Below are answers to Frequently Asked Questions regarding access to Secretary of State services during the coronavirus outbreak.

- **What services are available during the temporary closure of Secretary of State offices?**
  Customers can still complete certain transactions online at Michigan.gov/ExpressSOS, although processing may be delayed. All transactions that cannot ordinarily be completed online will be temporarily suspended.

- **When will Secretary of State offices reopen?**
  All Secretary of State offices will be closed through the duration of Governor Whitmer's Stay Home, Stay Safe Executive Order. Customers should anticipate branch offices will not be reopened prior to April 23. Secretary Benson and her administration will continue to work with Governor Whitmer's administration to monitor public health across the state in order to determine when we can reopen branch offices.

- **How can I contact the Michigan Department of State during the office closures?**
  Customers may contact the Michigan Department of State by calling 888-SOS-MICH or visiting Michigan.gov/ContactSOS. Our department cautions customers that we may not be able to respond to all inquiries due to the high volume of communications and limitations placed on staffing during this time.

- **How can I complete my transaction while offices are closed?**
  Many transactions can be completed without a branch visit by going online to Michigan.gov/ExpressSOS. Processing of all transactions that cannot ordinarily be completed online will be temporarily suspended.

Updated March 26, 2020 at 12:00 p.m.

- **Will appointments still be honored?**
  All appointments previously scheduled to take place during the temporary closure have been canceled. Customers whose appointments were impacted by the cancelation were sent an email with instructions for rescheduling.

  Customers who did not receive this email and have a transaction that must be completed in person are advised to reschedule their appointment by visiting Michigan.gov/SOSAppointments or calling 888-SOS-MICH. Please note, **future appointments scheduled are subject to cancellation** as we continue to monitor public health.

- **Can I still complete my transaction by mail during the temporary closure?**
  No, transactions cannot be completed by mail during the temporary Secretary of State office closure. **Please do not attempt to complete your transaction by mail during this period.** Your transaction will not be processed while our offices are closed and may be delayed once offices are reopened.

  Transactions mailed before the closure will be processed when mail operations resume.

- **Will expiration dates be extended for driver's licenses, state identification cards and vehicle registrations?**
  Our department continues to work with Governor Whitmer's administration to explore the option for extending expiration dates for state identification, vehicle registrations and other vital documents obtained through the Michigan Department of State.

  While we are bound by state law and cannot currently provide extensions, **our department has waived late fees during this time.** We have notified the Michigan State Police that our offices are closed and asked them to notify local law enforcement agencies across the state **and exercise discretion** as this may impact drivers' ability to update their licenses and vehicle registration.

- **Will late fees be waived during the Secretary of State office closures?**
  Yes, our department has waived late fees during this time, going back to March 13.

- **Has the Michigan Department of State coordinated with law enforcement regarding office closures?**
  Yes, we have notified the Michigan State Police that our offices are closed and asked them to notify local law enforcement agencies across the state **and exercise discretion** as this may impact drivers' ability to update their licenses and vehicle registration.

Updated March 26, 2020 at 12:00 p.m.

- **My license and/or registration is now expired and I was unable to renew due to the branch office closure. What happens if I am pulled over for a traffic violation?**
This is up to the discretion of law enforcement. As the Michigan Department of State is not a law enforcement agency, we cannot speak for law enforcement on this issue, however, we have notified the Michigan State Police that our offices are closed and asked them to notify local law enforcement agencies across the state **and exercise discretion** as this may impact drivers' ability to update their licenses and vehicle registration.

  If you have significant concerns with this, we recommend contacting your local law enforcement agency at their non-emergency number for further guidance.

- **My job requires that I have an up-to-date license/state-issued identification card/vehicle registration/etc. How can I renew these items if I am unable to do so online, but need to do so to conduct my work?**
During the temporary closure, the Michigan Department of State is only permitted to conduct emergency transactions for those who support services **necessary for sustaining life** during the coronavirus outbreak.

  If you or your employer believes your work falls into this category, we ask that you contact your industry's professional association and ask them to contact us with your needs and any other such needs from your sector. Our department will review and process only emergency transactions from these professional industry associations that clearly articulate their employee(s) need for our credential to work in a critical infrastructure sector to sustain life during the Stay Home order.

- **How can I renew my commercial driver's license (CDL) during temporary office closures?**
During the temporary closure, CDL renewals will be exclusively limited to those who transport goods and services **necessary for sustaining life** during the coronavirus outbreak.

  If you or your employer believes your work falls into this category, we ask that you contact your industry's professional association and ask them to contact us with your needs and any other such needs from your sector. Our department will review and process only emergency transactions from these professional industry associations that clearly articulate their employee(s) need for our credential to work in a critical infrastructure sector to sustain life during the Stay Home order.

- Additionally, we have notified the Michigan State Police that our offices are closed and asked them to notify local law enforcement agencies across the state **and exercise discretion** as this may impact drivers' ability to update their licenses and vehicle registration. Our department has also waived late fees during this time.

Updated March 26, 2020 at 12:00 p.m.

- **How will dealers complete business during the temporary closure?**
  During the temporary closure, dealer work will be exclusively limited to transactions necessary for supporting critical infrastructure or health and safety during the coronavirus outbreak. Those who are still unclear as to how to complete dealer transactions during the temporary closure should contact Michigan.gov/ContactSOS and select "Dealers, Mechanics & Repair Facilities" from the list of topics.

- **Will requests for driver or vehicle records be processed during the temporary office closure?**
  No, driver and vehicle record requests will not be processed during the temporary office closure.

- **How will disability parking placard applications and renewal requests be processed during the temporary office closure?**
  We have temporarily suspended processing for disability parking placard applications and renewals due to our inability to receive and/or send mail while our offices are closed.

- **How will the temporary closure impact services for out-of-state residents?**
  We have temporarily suspended processing of out-of-state resident transactions through our Special Services Branch office due to our inability to receive and/or send mail while our offices are closed. Many transactions can still be completed online, and we advise those who are eligible to complete their business online to do so.

- **How will the temporary closure impact reinstatement hearings and driver assessments?**
  All driver assessment and license reinstatement hearings through the Office of Hearings and Administrative Oversight will be postponed until further notice during the temporary office closure.

  **Those who receive a Notice to Appear by mail instructing them to appear for a hearing during the effective period of the Stay Home Executive Order can disregard the request and should not appear for their hearing or assessment on the listed date.** Once our department is able to continue conducting in-person hearings and assessments, those who received a notice to appear during the temporary closure will be sent a new notice with information regarding their rescheduled hearing.

  Drivers who may be impacted by changes to hearing and driver assessment schedules during this time are advised to **routinely check the Michigan Department of State website for updates** on when hearings will be set to resume.

  Additionally, certain services for driver license appeal hearings can still be accessed online through the Drive Appeal Integrated System (DAIS).

Updated March 26, 2020 at 12:00 p.m.

- **How will the temporary closure impact the REAL ID compliance deadline?**
  During the temporary office closure, the Michigan Department of State will not be able to process requests for standard licenses to be made REAL ID compliant. However, the U.S. Department of Homeland Security has extended the deadline for REAL ID compliance by one year, until October 1, 2021 to protect public health by reducing the need for in-person visits to motor vehicle agencies.

- **How will the inability to renew a driver's license in person impact air travel and Transportation Security Administration (TSA) requirements?**
  The federal Transportation Security Administration (TSA) has issued guidelines for individuals who plan to travel by air whose state-issued identification expired on or after March 1, 2020. Please visit TSA.gov/Coronavirus for more information.

- **How will the inability to renew a driver's license or temporary license plates in person impact interstate travel?**
  Interstate travelers questioned by non-Michigan law enforcement should explain that our offices are closed and/or show them our notification of this at Michigan.gov/SOS.

- **Will local elections still be held during the coronavirus outbreak?**
  Many jurisdictions have decided to postpone their May election to August. For those that did not or could not, Secretary Benson and local election clerks across the state are planning to carry out the May election by mailing all registered voters in the election districts an application to vote by mail (absentee). This is the optimal and safest way to participate in our democracy at this time.

  The application will come with a postage-paid return envelope. If the voter applies for a vote by mail/absent voter ballot, that will also arrive with a postage-paid return envelope. More information will be made available on the Michigan.gov/SOS website as these decisions are made.

Updated March 26, 2020 at 12:00 p.m.

## <u>CERTIFICATE OF SERVICE</u>

On March 31st, 2020, I e-filed the above document using the Court's ECF system which will send same-day e-notification to all counsel of record.  I also emailed the filing to: Heather S. Meingast at meingasth@michigan.gov.  The above document will also be served on the Defendants with the complaint as soon as practicable to:

Gov. Gretchen Whitmer
P.O. Box 15282
Lansing, MI 48901.

Jonathan Brater
Director
Bureau of Elections
430 W. Allegan
Lansing, Michigan 48933

Jocelyn Benson
Secretary of State of Michigan
430 W. Allegan
Lansing, Michigan 48933

/s/ Gregory J. Rohl (P39185)
Attorney for Plaintiff