UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC ESSHAKI, as candidate for United
States Congress and in his individual
capacity,

    Plaintiff,

and

MATT SAVICH and DEANA BEARD,

    Intervenors-Plaintiffs,

v

GRETCHEN WHITMER, Governor of
Michigan, JOCELYN BENSON, Secretary of
state of Michigan, and JONATHAN
BRATER, Director of the Michigan Bureau
of Elections, in their official capacities,

    Defendants.

No. 2:20-cv-10831

HON. TERRENCE G. BERG

MAG. ELIZABETH A. STAFFORD

**DEFENDANTS' EMERGENCY
MOTION UNDER RULE 60(B)
FOR LIMITED RELIEF FROM
THE COURT'S ORDER
GRANTING A PRELIMINARY
INJUNCTION, OR
ALTERNATIVELY FOR A STAY
PENDING EMERGENCY
APPEAL**

**RESPONSE REQUESTED AS
SOON AS POSSIBLE BUT NO
LATER THAN FRIDAY APRIL
24, 2020 GIVEN THE NEED TO
EXPEDITE DEFENDANTS'
APPEAL**

_____/

Gregory J. Rohl (P39185)
Attorney for Plaintiff
41850 W. Eleven Mile Road, Suite 110
Novi, Michigan 48375
248.380.9404

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909
517.335.7659

Michael S. Cafferty (P36613)
Attorney for Intervenor-Plaintiff Savich
333 West Fort Street, Suite 1400
Detroit, Michigan 48226
313.964.3070

Deana Beard, *In Pro Per*
Intervenor-Plaintiff
2885 South Trenton Drive
Trenton, Michigan 48183
734.502.7411

_____/

## DEFENDANTS' EMERGENCY MOTION UNDER RULE 60(B) FOR LIMITED RELIEF FROM THE COURT'S ORDER GRANTING A PRELIMINARY INJUNCTION, OR ALTERNATIVELY FOR A STAY PENDING EMERGENCY APPEAL

Defendants Michigan Governor Gretchen Whitmer, Secretary of State

Jocelyn Benson, and Director of Elections Jonathan Brater (the State Defendants),

in their official capacities, by and through their attorneys, move for limited relief

from the Court's April 20, 2020 order granting a preliminary injunction under Fed.

R. Civ. P. 60(b)(2), or alternatively for a limited stay pending appeal under Fed. R.

Civ. P. 62(c) and Fed. R. App. P. 8(a)(1)(C) of the order granting a preliminary

injunction.  In support of their motion, the State Defendants state as follows:

1.     Plaintiff Eric Esshaki asked this Court to enjoin the signature requirement

for nominating petitions to qualify as a candidate for the U.S House of

Representatives.  He argued the Covid-19 pandemic and the Governor's Stay-at-

Home Orders made it impossible for him to meet the signature requirement by the

April 21, 2020 filing deadline, and as a remedy the Court should reduce his signature requirement by 40%.

2.    On April 20, 2020, the Court granted Plaintiff's motion for a preliminary injunction, principally ordering that that the filing deadline be extended to May 8, 2020, that the Director of Elections implement a process for collecting and filing signatures by email, and that the signature thresholds by reduced by 50%.

3.    The next day, April 21, 2020, Plaintiff Esshaki appeared at the Michigan Bureau of Elections and timely filed nominating petitions containing signatures in excess of his minimum filing requirement.  The filing also revealed that despite his representations and arguments to the Court to the contrary, Plaintiff and his volunteers had been collecting signatures during the time frame covered by the Stay-at-Home orders, and that Plaintiff had also been successful in collecting a significant number of signatures by mail.  In other words, Plaintiff met the very requirements from which he sought relief from this Court.

4.    The facts of Plaintiff's April 21 filing constitute new evidence that neither the State Defendants nor the Court possessed in responding to and deciding Plaintiff's motion for an injunction.  Because this evidence is material and likely would have produced a different result had it been presented to the Court, Defendants seek limited relief from the Court's order under Fed. R. Civ. P

60(b)(2). Specifically, the State Defendants seek relief only from the Court's 50% reduction of the signature thresholds.

5. Alternatively, if the Court denies that requested relief, the State Defendants request this Court stay that portion of its order imposing the 50% signature reduction pending an emergency appeal by Defendants to the Sixth Circuit. The State Defendants are likely to succeed on their narrow appeal of the signature reduction, and the other stay factors weigh in favor of granting Defendants a stay.

6. Time is of the essence because Defendants' requests for relief, if successful, impact the number of signatures candidates will be required to file by May 8, 2020 in order to appear on the August 4, 2020 primary election ballot. Defendants thus ask this Court to grant their motion on an expedited basis.

7. Pursuant to L.R. 7.1, on April 22, 2020, defense counsel sought concurrence in the relief requested in this motion but defense counsel either did not hear back from opposing counsel by the time the motion was filed, or concurrence was not granted, necessitating the filing of this motion.

WHEREFORE, for the reasons more fully set forth in the attached brief, Defendants Governor Gretchen Whitmer, Secretary of State Jocelyn Benson, and Director of Elections Jonathan Brater respectfully request that this Honorable Court grant their motion for limited relief from the Court's order granting Plaintiff Esshaki a preliminary injunction under Fed. R. Civ. P. 60(b). Alternatively, if the

Court denies the request for relief under Rule 60(b), Defendants request that the

Court stay that portion of the injunction reducing the signature thresholds by 50%

pending Defendants appeal to the Sixth Circuit.

Respectfully submitted,

DANA NESSEL
Attorney General

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  meingasth@michigan.gov
P55439

Dated:  April 22, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2020, I electronically filed the above document(s)
with the Clerk of the Court using the ECF System, which will provide electronic
copies to counsel of record.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  meingasth@michigan.gov
P55439

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC ESSHAKI, as candidate for United
States Congress and in his individual
capacity,

    Plaintiff,

and

MATT SAVICH and DEANA BEARD,

    Intervenors-Plaintiffs,

v

GRETCHEN WHITMER, Governor of
Michigan, JOCELYN BENSON, Secretary of
state of Michigan, and JONATHAN
BRATER, Director of the Michigan Bureau
of Elections, in their official capacities,

    Defendants.

No. 2:20-cv-10831

HON. TERRENCE G. BERG

MAG. ELIZABETH A. STAFFORD

**DEFENDANTS' BRIEF IN
SUPPORT OF EMERGENCY
MOTION UNDER RULE 60(B)
FOR LIMITED RELIEF FROM
THE COURT'S ORDER
GRANTING A PRELIMINARY
INJUNCTION, OR
ALTERNATIVELY FOR A STAY
PENDING EMERGENCY
APPEAL**

**RESPONSE REQUESTED AS
SOON AS POSSIBLE BUT NO
LATER THAN FRIDAY APRIL
24, 2020 GIVEN THE NEED TO
EXPEDITE DEFENDANTS'
APPEAL**

_____/

Gregory J. Rohl (P39185)
Attorney for Plaintiff
41850 W. Eleven Mile Road, Suite 110
Novi, Michigan 48375
248.380.9404

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
PO Box 30736
Lansing, Michigan 48909

517.335.7659
Michael S. Cafferty (P36613)
Attorney for Intervenor-Plaintiff Savich
333 West Fort Street, Suite 1400
Detroit, Michigan 48226
313.964.3070

Deana Beard, *In Pro Per*
Intervenor-Plaintiff
2885 South Trenton Drive
Trenton, Michigan 48183
734.502.7411

_____/

**DEFENDANTS' BRIEF IN SUPPORT OF EMERGENCY MOTION
UNDER RULE 60(b) FOR LIMITED RELIEF FROM THE COURT'S
ORDER GRANTING A PRELIMINARY INJUNCTION, OR
ALTERNATIVELY FOR A STAY PENDING EMERGENCY APPEAL**

DANA NESSEL
Attorney General

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  meingasth@michigan.gov
P55439

Dated:  April 22, 2020

# TABLE OF CONTENTS

Page

Table of Contents ......................................................................... i

Index of Authorities ..................................................................... ii

Concise Statement of Issues Presented ........................................ iv

Controlling or Most Appropriate Authority.................................. v

Introduction.................................................................................. 1

Statement of Facts ....................................................................... 2

     A.    Statutory Requirements ..................................................... 6

     B.    Procedural History.............................................................. 8

Argument...................................................................................... 11

I.     The order granting preliminary injunctive relief should be amended to exclude the requirement that the signature thresholds be reduced by fifty percent for all candidates who otherwise meet the terms of the order. ............................................................................... 11

II.    Alternatively, the portion of the Court's preliminary injunction ordering that signature requirements be reduced by fifty percent should be stayed pending the State Defendants' emergency appeal. ........... 20

     A.    The State Defendants are likely to prevail on the merits of their narrow appeal regarding the signature reduction. ............................... 21

     B.    The State Defendants will be irreparably harmed absent a stay and the public interest weighs in favor of a stay................................ 26

     C.    The threat of harm to others is outweighed by the other factors. ....... 27

Conclusion and Relief Requested ............................................. 27

Certificate of Service ................................................................. 28

# INDEX OF AUTHORITIES

Page

## Cases

*American Party of Texas v. White*, 415 U.S. 767 (1974)...........................................23

*Bullock v. Carter*, 405 U.S. 134 (1972)....................................................................23

*Burdick v. Takushi*, 504 U.S. 428 (1992)..................................................................20

*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006)...............................................................................................................21

*Frank v. Walker*, 574 U.S. 929 (2014)......................................................................24

*GenCorp. Inc. v. Am. Int'l Underwriters*, 178 F.3d 804 (6th Cir. 1999)..................12

*Good v. Ohio Edison Co.*, 149 F.3d 413 (6th Cir. 1998)...........................................12

*Graveline, et al v. Benson, et al*., 336 F. Supp. 3d 801 (E.D. Mich. 2018)..............13

*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608 (6th Cir. 2012) ....................... 12, 17

*Jenness v. Forton*, 403 U.S. 431 (1971) ...................................................................23

*Jinks v. AlliedSignal, Inc.*, 250 F.3d 381 (6th Cir. 2001) .........................................17

*Jones v. Caruso*, 569 F.3d 258 (6th Cir. 2009)........................................................21

*Libertarian Party of Ky v. Grimes*, 835 F.3d 570 (6th Cir. 2016)...........................24

*Maryland v. King*, 133 S. Ct. 1 (2012) .....................................................................26

*Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310 (6th Cir. 1998) ..................22

*Michigan Coal of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991) ...........................................................................................26

*Munro v. Socialist Workers Party*, 479 U.S. 189 (1986)..........................................23

*Nader v. Blackwell*, 230 F.3d 833 (6th Cir. 2000)....................................................26

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977)..........26

*Olle v. Henry & Wright Corp.*, 910 F.2d 357 (6th Cir. 1990) .................................17

*Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566 (6th Cir. 2002) ..........................................................................21

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 2020 WL 1672707 at *1 (U.S., April 6, 2020) ................................................................ 24, 25

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) ............................23

*U.S. Student Ass'n Found. v. Land*, 546 F.3d 373 (6th Cir. 2008) ........................22

## Statutes

Mich. Comp. Laws § 10.33 ................................................................................5

Mich. Comp. Laws § 168.133 ................................................................... *passim*

Mich. Comp. Laws § 168.413 ............................................................................6

Mich. Comp. Laws § 168.552 ............................................................................8

Mich. Comp. Laws § 168.552(10) .....................................................................8

Mich. Comp. Laws § 168.552(11) .....................................................................8

Mich. Comp. Laws §168.544f ................................................................... *passim*

## Rules

Fed. R. Civ. P. 60(b)(2) ........................................................................... *passim*

## Constitutional Provisions

Mich. Const. 1963, art 2, § 4(2) .....................................................................20

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.    Whether the Court's order granting preliminary injunctive relief should be amended to exclude the requirement that the signature thresholds be reduced by fifty percent.

2.    Whether the portion of the Court's preliminary injunction ordering that signature requirements be reduced by fifty percent should be stayed pending the State Defendants' emergency appeal.

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>Authority</u>:

Mich. Comp. Laws § 168.544f
Mich. Comp. Laws § 168.133

*Burdick v. Takushi*, 504 U.S. 428 (1992)
*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006)
*Libertarian Party of Ky v. Grimes*, 835 F.3d 570 (6th Cir. 2016)
*Maryland v. King*, 133 S. Ct. 1 (2012)
*Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310 (6th Cir. 1998)
*Michigan Coal of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991)
*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608 (6th Cir. 2012)
*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 2020 WL 1672707 at *1 (U.S., April 6, 2020)
*U.S. Student Ass'n Found. v. Land*, 546 F.3d 373 (6th Cir. 2008)

## INTRODUCTION

Plaintiff Eric Esshaki asked this Court to enjoin the signature requirement for nominating petitions to qualify as a candidate for the U.S House of Representatives.  He argued the Covid-19 pandemic and the Governor's Stay-at-Home Orders made it impossible for him to meet the signature requirement by the April 21, 2020 filing deadline, and as a remedy the Court should reduce his signature requirement by 40%.  On April 20, 2020, the Court granted Plaintiff's motion for a preliminary injunction, ordering, among other things, that the filing deadline be extended to May 8, 2020, that the Director of Elections implement a process for collecting and filing signatures by email, and that the signature thresholds be reduced by 50%.  (R. 23, Injunction Order, Page ID ## 359-360.)

The next day, April 21, 2020, Plaintiff Esshaki appeared at the Michigan Bureau of Elections and timely filed nominating petitions containing signatures in excess of the statutorily required minimum filing requirement.  The filing revealed that despite his representations and arguments to the Court to the contrary, Plaintiff and his volunteers had been collecting signatures during the time frame covered by the Stay-at-Home orders, and that Plaintiff had also been successful in collecting a significant number of signatures by mail.  In other words, Plaintiff met—indeed exceeded—the very requirements from which he sought relief from this Court.

1

The facts of Plaintiff's April 21 filing constitute new evidence that neither the State Defendants nor the Court possessed in responding to and deciding Plaintiff's motion for an injunction. Because this evidence is material and likely would have produced a different result had it been presented to the Court, Defendants seek limited relief from the Court's order under Fed. R. Civ. P. 60(b)(2). Specifically, the State Defendants seek only relief from the Court's 50% reduction of the signature thresholds.

Alternatively, if the Court denies that request for relief, the State Defendants request this Court stay that portion of its order imposing the 50% signature reduction pending an emergency appeal by Defendants to the Sixth Circuit. The State Defendants are likely to succeed on their narrow appeal of the signature reduction, and the other stay factors weigh in favor of granting Defendants a stay.

Time is of the essence because Defendants' requests for relief, if successful, impact the number of signatures other candidates will be required to file by May 8, 2020 in order to appear on the August 4, 2020 primary election ballot. Defendants thus ask this Court to grant their motion on an expedited basis.

## STATEMENT OF FACTS

Plaintiff Eric Esshaki is a registered nurse and licensed attorney running as a Republican candidate for Michigan's Eleventh Congressional District of the United States House of Representatives. (Comp., R. 1, Page ID ## 2, 5, ¶¶ 2, 17). Esshaki

2

filed his statement of candidacy with the Federal Election Commission on October 31, 2019. (*Id*. ¶ 18.)[1] He also "hired campaign staff and has been diligently campaigning since October 2019." (*Id*., ¶ 19.) Under Michigan's Election Law, as enacted, to gain access to the August 4, 2020 primary ballot, Esshaki was required to file a nominating petition containing at least 1,000 valid signatures from registered voters with Defendant Secretary of State Jocelyn Benson by April 21, 2020. *See* Mich. Comp. Laws §§ 168.133, 168.544f.

Esshaki alleged that "his campaign team implemented a plan to collect the required number of signatures early on in his campaign." (*Id*., Page ID # 6, ¶ 21.) He further alleged that, "his campaign team, and several volunteers and supporters have been working diligently, and ha[d] already collected nearly seven hundred (700) valid signatures," presumably by the time he filed his complaint on March 31, 2020. (*Id*., Page ID # 6, ¶ 22.)

On March 10, 2020, Defendant Governor Gretchen Whitmer declared a state of emergency and invoked emergency powers in Executive Order No. 2020-4, in response to the spreading pandemic related to Covid-19 and to two confirmed cases in Michigan.[2] While this order noted the serious nature of the virus, it did

---

[1] Plaintiff's statement and filings are available on the Federal Election Commission's website at https://www.fec.gov/data/candidate/H0MI11129/.
[2] EO No. 2020-4, available at https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-521576--,00.html.

3

not restrict the movement or gathering of people in Michigan.  On March 13, 2020,

Governor Whitmer issued Executive Order 2020-5 prohibiting assemblages of 250

or more people in a single shared space with limited exceptions, and ordering the

closure of all K-12 school buildings.[3]

Esshaki alleged that after President Donald Trump asked people nationwide

on March 15, 2020 to begin social distancing in response to the spreading

pandemic related to Covid-19, "Esshaki and his campaign postponed *some* of its

efforts to collect signatures."  (*Id*., Page ID ## 6-7, ¶¶ 23-24.) (Emphasis added).

The next day, on March 16, 2020, Governor Whitmer ordered various places

of public accommodation, like restaurants, bars, and exercise facilities, to close

their premises to the public.[4]  And on March 17, 2020, the Governor issued an

order rescinding 2020-5, changing the cap on assemblages to 50 persons in a single

shared indoor space, and expanding the scope of exceptions from that cap.[5]

Subsequently, on March 23, 2020, again in response to the spreading Covid-

19 pandemic in Michigan, Governor Whitmer issued Executive Order No. 2020-21

(the "Stay-at-Home Order"), which essentially ordered all persons not performing

---

[3] EO No. 2020-5, available at https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-521595--,00.html.

[4] EO No. 2020-9, available at, https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-521789--,00.html. Replaced by EO 2020-20.

[5] EO No. 2020-11, available at, https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-521890--,00.html.

essential or critical infrastructure job functions to stay in their place of residence, other than to obtain groceries, care for loved ones, engage in outdoor activity consistent with social distancing, and other limited exceptions. [6]  The order also prohibited, with limited exceptions, all public and private gatherings of any number of people that are not part of a single household.[7]  That order was to continue through April 13, 2020, however, on April 9, 2020, the Governor issued Executive Order 2020-42, extending the Stay-at-Home Order through April 30, 2020.[8]  A violation of an Executive Order, like the Stay-at Home-Order, is punishable as a misdemeanor.  Mich. Comp. Laws § 10.33.

As noted by Esshaki, the Stay-at-Home Order does not create an express exception from its restrictions for candidates and campaign staff.  (R. 1, Compl., Page ID # 8, ¶ 29).  He asserted that he attempted to obtain signatures by mail, and that while he sent out 1,000 pieces, he only obtained 15 signatures in return.  (R. 10, Esshaki Reply, Page ID # 159.)  He alleged that the Governor's Stay-at-Home Order makes it impossible for him "to obtain the required number of elector signatures by April 21, 2020."  (*Id.*, ¶ 36).

---

[6] EO No. 2020-21, available at https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-522626--,00.html.

[7] (*Id.*)

[8] EO No. 2020-42, available at https://content.govdelivery.com/attachments/MIEOG/2020/04/09/file_attachments/1423850/EO%202020-42.pdf.

### A.   Statutory Requirements

Mich. Comp. Laws § 168.133 provides the filing deadline for nominating petitions for the office of U.S House of Representatives.  Under the statute, this year's deadline for filing a nominating petition to gain access to the August 4, 2020 primary election ballot was April 21, 2020.  Similar statutes impose the same filing deadline for candidates seeking other offices.  *See, e.g*., Mich. Comp. Laws § 168.413 (circuit court candidates), § 168.467b (district court candidates).  (*See also* R. 6, Defs Resp to TRO, Ex 1, Page ID # 123).

Mich. Comp. Laws § 168.544f, sets the signature requirement for Esshaki as a congressional candidate for the House based on the population of the congressional district.  That statute requires him to submit a nominating petition containing at least 1,000 valid signatures.  (*Id*.)  Section 544f also provides the signature requirements for all other offices for which nominating petitions must be filed.  (*See* R. 6, Defs Resp to TRO, Ex 1, Page ID # 123.)

The filing deadline for nominating petitions is just one of many deadlines that regulate the election processes leading up to an election, and relevant here, leading up to the August 4, 2020 primary election.[9]  The deadline for nominating petitions helps ensure that the filing official responsible for canvassing such

---

[9] See 2020 Michigan Election Dates, pp 6-9, available at https://www.michigan.gov/documents/sos/2020_Elec-Dates-Booklet_ED-12_10-09-19_668275_7.pdf.

petitions has time to perform the canvass, and that the slate of candidates can be properly certified, and that ballots can be printed, proofed, and ready for delivery by the local clerks to absent ballot voters, including military and overseas voters.[10] The relevant deadlines for the August primary include:

| Date and Time[11] | Action | Statute |
|---|---|---|
| By 4:00 pm on April 21 | Candidates for partisan office must file nominating petitions and Affidavit of Identity for the August Primary | MCL 168.133 |
| By 4:00 pm on April 24 | Deadline for candidates to withdraw from the August Primary | MCL 168.134 |
| April 28 | Deadline to submit challenges against nominating petitions filed by partisan candidates to filing official | MCL 168.552 |
| June 2 | Board of State Canvassers completes canvass of nominating petitions filed by candidates for the August Primary; Secretary of State certifies candidates eligible to appear on August primary ballot to county election commissions. | MCL 168.552 |
| June 5 | Approximate date county clerks will begin printing ballots for the August Primary | |
| June 20 | Delivery of military and overseas AV ballots must begin | MCL 168.759a |
| June 20 | Deadline for county clerks to deliver AV ballots for the August Primary to local clerks | MCL 168.714 |
| June 25 | Deadline for AV ballots to be made available to voters | Mich. Const., Art. 2 § 4 |
| By 4:00 pm on July 24 | Write-in candidates file Declaration of Intent form | MCL 168.737a |
| August 4 | State Primary | |

---

[10] (*Id.*)

[11] All times are 5:00 pm unless otherwise specifically noted.

With respect to congressional candidates like Esshaki, after the filing deadline expires, interested parties have the opportunity to submit challenges against the nominating petitions to the Bureau of Elections within seven days. Mich. Comp. Laws § 168.552.  The petitions and any challenges must be canvassed by staff to determine the number of facially valid signatures by reviewing each petition sheet for facial defects such as heading errors, circulator errors, or incomplete signor information like omitted date or address.  The Bureau then completes a staff report containing recommendations to the Board of State Canvassers, which must be made available at least two full business days prior to the Board's meeting where it will determine the sufficiency of the nominating petitions.  Mich. Comp. Laws § 168.552(10).  The Board of State Canvassers must meet and complete the canvass of all nominating petitions by June 2, 2020.  Mich. Comp. Laws § 168.552(11).  That same day, the Secretary of State must certify the names of candidates eligible to appear on the August primary ballot to the local county clerks who will commence printing.  (*Id.*)

### B.  Procedural History

Plaintiff Esshaki filed his complaint for declaratory and injunctive relief, along with a motion for a temporary restraining order on March 31, 2020.  (R. 1, Compl. Page ID ## 1-39; R. 2, Mtn & Brf for TRO, Page ID ## 40-85).  On April 1, 2020, the Court and the parties, represented by counsel, conducted a telephone

conference to discuss Plaintiff's motion. Defendants agreed to submit a response to the motion by Friday, April 10, 2020, and did so. (*See* R. 6, Defs Resp to TRO, Page ID # 95.)

Motions to intervene were filed by two judicial candidates on April 14 and 15, 2020, respectively. (R. 11, Savich Mtn, Page ID # 169; R. 17, Beard Mtn., Page ID # 287). Amicus curiae briefs in support of Plaintiff Esshaki were filed by the Michigan branch of the American Civil Liberties Union, (R. 14, Mtn, Page ID # 238; R. 15, ACLU Brf, Page ID # 242), and by Daniel Finley, another judicial candidate, (R. 7, Mtn, Page ID # 126; R. 13, Finley Brf, Page ID # 194) on April 14, 2020. An amicus brief in support of State Defendants was filed by Whittney Williams, a competing candidate for the Eleventh Congressional District, on April 15, 2020. (R. 20, Mtn, Page ID # 321; R. 21, Williams Brf., Page ID # 314).

The Court held a videoconference hearing on Plaintiff's motion on Wednesday, April 15, 2020. And at 12.27 a.m. on Monday, April 20, 2020, the Court entered an order granting a preliminary injunction. (R. 23, Injunction Order, Page ID # 321.) The Court also granted the motions to intervene by Savich and Beard, and the motions to file amicus briefs. (R. 22, Order, Page ID # 318). In its injunction, the Court ordered "that all candidates":

> (i) who filed a statement of organization under the Federal Election Campaign Act of 1971, 52 U.S.C. §§ 30101 *et seq*., or established a candidate committee under the Michigan Campaign Finance Law, Mich. Comp. Laws §§ 169.201 *et seq*., before March 10, 2020; and

(ii) who are required by a relevant section of the Michigan Election Law, Mich. Comp. Laws §§ 168.1 *et seq*., to file a nominating petition by April 21, 2020, for the purpose of appearing on the August 4, 2020, primary election ballot; and

(iii) who do not have the option under Michigan Election Law to appear on the August 4, 2020, primary election ballot through the payment of a filing fee in lieu of filing a nominating petition;

Shall be qualified for inclusion on the August 4, 2020 primary election ballot *if the candidate submits **fifty percent** of the number of valid signatures required by Mich. Comp. Laws § 168.544f* with the appropriate filing official as provided by Michigan Election Law by 5:00 p.m. on May 8, 2020. No other filing deadline is extended under this Order.  [R. 23, Injunction Order, Page ID # 359-360 (emphasis added).]

The Court further ordered Defendant Director of Elections to implement, within 72 hours, a process "providing for an additional optional procedure that allows the collection and submission of ballot petition signatures in digital form by electronic means such as email."  (*Id*., Page ID # 360.)[12]  And finally, the Director of Elections was ordered to take all reasonable steps to inform local election officials of the terms of the Court's injunction.  (*Id*.)

As entered, the Court's order applies to the offices of  U.S. Senate, U.S. Congress, Wayne County Community College (WCC) Trustee, all judicial offices (but only for candidates who are not the current incumbent), and any city office

---

[12] That process has been implemented.  See the Bureau of Elections' website at https://www.michigan.gov/sos/0,4670,7-127-1633---,00.html.

where the city charter does not allow the option to file with a fee.[13]  All of the

covered offices file nominating petitions with the Secretary of State,[14] except for

the WCC Trustee, which are filed with the Wayne County Clerk, and the city

offices, which are filed with the relevant city clerk.  The State Defendants also

understand the order as applying to candidates within the covered offices who filed

nominating petitions prior to the Court's issuance of the injunction.  In other

words, candidates who filed nominating petitions early and met the requisite

signature filing threshold would have until May 8, 2020 to supplement their filings,

and would be subject to the 50% signature reduction.

## ARGUMENT

### I.   The order granting preliminary injunctive relief should be amended to exclude the requirement that the signature thresholds be reduced by fifty percent for all candidates who otherwise meet the terms of the order.

The State Defendants move for relief from the Court's April 20, 2020 order

granting a preliminary injunction.  Fed. R. Civ. P. 60(b)(2) provides that "[o]n

motion and just terms, the court may relieve a party . . .  from a[n] . . . order" based

---

[13] See the Bureau of Elections' website at https://www.michigan.gov// documents/sos/Webpage_Update_Final_688056_7.pdf.
[14] See 2020 Michigan Candidate Listing for August Primary, available at https://miboecfr.nictusa.com/election/candlist/2020PRI_CANDLIST.html, for up to date filings.

11

on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."

To prevail on a motion under Rule 60(b)(2) based on newly discovered evidence, a party "must demonstrate (1) that it exercised due diligence in obtaining the information and (2) [that] the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (quoting *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998)).  The newly discovered evidence "must have been previously unavailable." *Id.* (citing *GenCorp. Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

In his motion for temporary restraining order filed March 31, 2020, Plaintiff argued that enforcement of the filing deadline and the signature requirement against him was unconstitutional because "Defendants have stripped candidates like Esshaki of the ability to meet these requirements because the Stay-home Order prohibits Esshaki from leaving his home for non-essential purposes like signature gathering." (R. 2, TRO Brf, Page ID # 53).  (*Id.*)  He argued that the Stay-at-Home Order "further requires Esshaki to maintain a distance of six feet from voters in his district, which effectively eliminates any possibility of electors to provide their signatures without themselves having violated the Order." (*Id.*)  And that taken together, the statutes and "the Stay-home Order impose burdens so severe that they

12

'function as an *absolute* bar' to Esshaki getting his name on the August 2020 primary ballot." (*Id*., quoting *Graveline, et al v. Benson, et al*., 336 F. Supp. 3d 801, 809 (E.D. Mich. 2018) (emphasis added).

In his declaration in support of his motion, Plaintiff asserted that the Stay-at-Home Order impeded or prohibited him from continuing to gather signatures in person. (R. 2, TRO Brf, Ex A, Esshaki Dec, Page ID ## 61, 66.) He complained that without relief, he would have lost a substantial amount of time and money or would have been required to spend "a substantial amount of time and money" to attempt to collect signatures by mail "when there is no evidence that such a strategy would yield even one additional signature." (*Id*.)

Plaintiff essentially repeated these arguments in his reply brief filed April 14, 2020. (R. 10, Plfs Reply, Page ID ## 156, 157-158, 162, 164.) Plaintiff also expounded upon his efforts to secure signatures by mail, asserting that he mailed approximately 1,000 petitions on or around April 2, at a cost of $1.75 per piece, and that as of April 14, he had received "approximately 15 signatures by mail," and that this equated to a price of $115.00 per signature. (*Id*., Page ID # 159.) "Thus, Esshaki would be required to spend around $45,000 to obtain the additional 400 signatures needed." (*Id*.) For relief, Plaintiff requested a 40% reduction in signatures, which would "reduce the burden on Esshaki and other similarly situated candidates." (*Id*., Page ID # 166.)

The Court was persuaded by Plaintiff's arguments to grant injunctive relief. First, the Court found that the State's argument that Plaintiff was not sufficiently diligent in collecting signatures to be unsupported in the record, while Plaintiff attested that they had events planned for late March and April that had to be cancelled after the Governor's Order.  (R. 23, Injunction Order, Page ID ## 334-335.)  Second, the Court rejected the State's argument that Plaintiff should have increased signature collection efforts after the Governor's State of Emergency Declaration, as that would have gone against the advice and guidance offered by the government at the time.  (*Id.*, Page ID # 336.)  Third, the Court rejected the argument that collecting signatures by mail was a sufficient alternative to in-person signature gathering.  The Court found that utilizing the mail-based signature gathering method was less effective and more expensive.  (*Id.*, Page ID # 337.)  This finding was based upon Plaintiff's alleged efforts, in which he mailed 1,000 petitions at a cost of $1.75 each and received only 14 additional signatures, at an effective cost of $115 per signature.  (*Id.*)  The Court noted that while a candidate is not entitled to free access to the ballot, the sudden and unforeseen necessity of a mail-only signature gathering effort was "far more" than an incidental expense and was potentially prohibitive.  (*Id.*, Page ID # 338).  The Court also observed that the efficacy of a mail-only effort was—in the context of this pandemic—unproven and questionable.  (*Id.*, Page ID ## 339-340).  Lastly, the

14

Court rejected the State's argument that Plaintiff's ability to alternatively run as a write-in candidate reduced the severity of the burden.

Having concluded that the burden on Plaintiff was severe, the Court then considered whether the signature requirements were narrowly drawn to advance compelling state interests. (*Id.*, Page ID ## 342-343). As to the number of signatures required, the Court held that even if the state interests in ensuring a modicum of support for a candidate were compelling, the regulatory means were not narrowly tailored in the context of the COVID-19 pandemic. (*Id.*, Page ID ## 344-345). The Court observed that under normal circumstances, gathering one thousand signatures, as Esshaki was otherwise required to do, would be an indication of the candidate's popular support. (*Id.*, Page ID # 345.) But the Court found that the Governor's Stay-at-Home Order effectively halted the ability to gather signatures after March 23, and there was no other state action to reduce the number of signatures required in proportion to the reduction in time to gather them. (*Id.*, Page ID # 345.) Stated differently, even if the State normally had a compelling interest in enforcing the signature requirement, the State had not shown that it has a compelling interest in enforcing the same number of signatures in the context of the pandemic. (*Id.*, Page ID # 346.)

As a remedy, the Court determined that it would reduce the number of signatures, extend the deadline for submission to May 8, and expand the available

means of gathering signatures to include electronic means. (*Id.*, Page ID # 355). And after concluding that a reasonably diligent candidate should have expected to reach the halfway point for signature gathering when just a month remained, the Court held that the number of signatures required should similarly be reduced by 50%. (*Id.*, Page ID # 358). The Court entered its order granting injunctive relief on April 20, 2020.

The very next day, on April 21, 2020, Plaintiff Esshaki personally appeared at the Michigan Bureau of Elections at approximately 10:30 a.m. to file his nominating petitions before the 4:00 p.m. statutory deadline. (Ex A, Malerman Dec, ¶ 4). A review of his filing revealed that 793 of Plaintiff's signatures were collected before the Governor's March 23 Stay-at-Home Order. (*Id.*, ¶ 5(h).) Another 242 signatures were collected between April 9 and April 20, 2020, by Plaintiff Esshaki and other volunteer circulators, which was after issuance of the Stay-at-Home Orders, and presumably were collected through some appropriate form of in-person interaction between the circulator and the signer. (*Id.*, ¶¶ 3, 5(a)-(e).) And another 228 signatures appear to have been collected by mail between April 7 and April 19, 2020, which again was after issuance of the original or the extended Stay-at-Home Orders. (*Id.*, ¶ 5(f)-(g).) Thus, despite Esshaki's representations in his pleadings and at the hearing that the Stay-at-Home Orders were prohibiting him and/or his volunteers from collecting signatures, and that a

16

mail campaign was not feasible because of costs, response rate, and trouble with the post office, he secured a substantial number of additional signatures after the issuance of those orders and many by mail.  As a result, Plaintiff timely filed approximately 1,263 signatures, more than 25% (or 263 signatures) over the minimum number of signatures required by § 544f, and far in excess of the 50% reduction (or 500 signatures) ordered by the Court.  (*Id.*, ¶ 6(a)-(b).)  Under the terms of the Court's order, Plaintiff remains free to supplement this filing with additional signatures until the extended filing deadline expires at 5:00 p.m. on May 8, 2020.  (*Id.*, ¶ 7.)

This evidence of Plaintiff's April 21 filing is new evidence that State Defendants could not have produced in opposition to Plaintiff's motion for an injunction because the evidence was not yet available to them.  *HDC, LLC*, 675 F.3d at 615.[15]  But the State Defendants have exercised diligence in bringing it to the Court's attention upon discovering the information on April 21.  (*Id.*)  Further, Defendants believe that this evidence "is material and controlling and clearly would have produced a different result" had it been "presented" to the Court before

---

[15] Rule 60(b)(6) also permits a court to grant relief for "any other reason that justifies" it; however, the rule applies only in "exceptional and extraordinary circumstances not addressed by the first five subsections of Rule 60(b)." *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 387 (6th Cir. 2001). Should the Court not agree the filing presents new evidence, Rule 60(b)(6) also supports relief here because this is an "unusual and extreme situation[ ] where principles of equity mandate relief."  *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990).

the Court entered the April 20, 2020 order granting Plaintiff a preliminary injunction. (*Id.*) Surely some or all of this information was available to Plaintiff and could, or arguably should, have been provided to the Court before April 20, 2020.

Plaintiff Esshaki is the principal Plaintiff in this case, the only party who moved for an injunction, and the Court focused on his claims in its order.[16] And as demonstrated above in the discussion of the Court's order, the Court very clearly relied upon, and was persuaded by, Plaintiff Esshaki's representations and argument that the Covid-19 pandemic and the Governor's orders would ultimately prohibit him from collecting sufficient signatures by the April 21 deadline. The Court was also plainly persuaded by Plaintiff's representations and argument that collecting signatures by mail was not a viable or sufficient alternative to in-person signature gathering. Just reading the Court's order, it could hardly be disputed that Esshaki's representations as to his inability to comply with the law due to the Governor's orders formed the basis for the Court's grant of relief.

---

[16] The Court granted motions to intervene filed by Matt Savich and Deana Beard after the April 15 hearing, (R. 22, Order granting intervention), and stated that because Defendants had not been able to respond to the intervenors, the Court's "Order focuses primarily on Mr. Esshaki's arguments, and refers to him as 'Plaintiff.'" (R. 23, Injunction Order, Page ID # 323, n 5.)

And in that case, it is difficult to believe that the Court would have reached the same conclusions or granted the same relief had it possessed the new evidence showing that Plaintiff was able to do everything he professed he could not given the pandemic and the Governor's orders. Defendants believe that this new evidence would support relieving them from the terms of the Court's injunction in its entirety. But that is not what the State Defendants request in this brief. Defendants previously conceded to the Court that extending the filing deadline to May 8 could be done without causing significant harm to the primary election schedule. Defendants also proposed to formulate a process to permit candidates with nominating petitions due by April 21 to collect and file signatures by email. Defendants thus do not seek relief from those terms of the Court's injunction.

But Defendants *do* request relief from the requirement that signature thresholds be reduced by 50% for all candidates under the terms of the injunction. The State Defendants argued against a reduction of signatures in their brief in opposition to the motion for a temporary restraining order, and maintained that position throughout the injunction hearing, and do so here again. The Court could only have ordered the signature reduction on the basis that Plaintiff Esshaki had demonstrated he was entitled to such relief based on his arguments that he could not meet the requirement. But as noted above, the new evidence shows that Plaintiff met the signature requirement by filing over 1,200 signatures. He did not

19

and does not require the relief he sought.  And under those circumstances, it was and is a clear intrusion into the State's prerogative to prescribe time, place, and manner restrictions for holding elections.  U.S. Const. art. I, § 4, cl. 1; Mich. Const. 1963, art. 2, § 4(2); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).  To the extent Plaintiff is concerned that he may need additional signatures as a cushion, as noted above, he may supplement his filing.  Moreover, pursuant to the Court's order, he now has the additional option of collecting signatures by email.  Accordingly, the State Defendants respectfully request that this Court grant their motion for limited relief from the Court's April 20, 2020, order and excise the 50% reduction in signatures.

## II. Alternatively, the portion of the Court's preliminary injunction ordering that signature requirements be reduced by fifty percent should be stayed pending the State Defendants' emergency appeal.

If the Court denies Defendants' motion under Rule 60(b), the State Defendants alternatively request that this Court stay its order granting the preliminary injunction to the extent it orders a 50% reduction in signatures, pending Defendants appeal to the Sixth Circuit.

The standard for a stay pending appeal of the grant of a preliminary injunction is as follows:

> [W]e consider "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public

> interest in granting the stay."  All four factors are not prerequisites but
> are interconnected considerations that must be balanced together.
> [473 F.3d 237, 244 (6th Cir. 2006) (citations omitted).]

*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir.

2006) (citations omitted).  It bears repeating that a preliminary injunction is an

extraordinary remedy, *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009), which

is to be granted only if the movant carries its burden of proving that the

circumstances clearly demand it.  *Overstreet v. Lexington-Fayette Urban County*

*Government*, 305 F.3d 566, 573 (6th Cir. 2002).  Every factor of this balancing test

supports an emergency stay.

## A.   The State Defendants are likely to prevail on the merits of their narrow appeal regarding the signature reduction.

The Court concluded that Plaintiff Esshaki demonstrated a substantial

likelihood of success on the merits of his claim that Mich. Comp. Laws §§

168.133, 168.544f, and the Governor's Stay-at-Home Orders, as applied in

combination to Plaintiff, unconstitutionally burdened Plaintiff's First and

Fourteenth Amendment associational rights.  (R. 23, Injunction Order, Page ID ##

330-346).  To remedy the burden, the Court extended the filing deadline to May 8,

ordered the implementation of a process for collecting signatures by email, and

reduced the signature thresholds by 50%. (*Id*., Page ID # 359-360).

The State Defendants are appealing only the Court's decision to order the

50% across-the-board reduction in signatures.  In evaluating the State Defendants'

likelihood of prevailing on appeal, the Court must consider the likelihood that Defendants can "show that the [ ] court abused its discretion in granting the preliminary injunction." *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 380 (6th Cir. 2008). Under the abuse-of-discretion standard, an "injunction will seldom be disturbed unless the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 312 (6th Cir. 1998).

The State Defendants maintain that the Court abused its discretion in ordering the signature reduction because the Court, albeit unknowingly, relied upon what were premature and ultimately unfounded representations and arguments by Plaintiff Esshaki that a signature reduction was necessary because he otherwise would not be able to meet the signature requirement by the filing deadline due to the pandemic and the Governor's orders. But as discussed above in Argument I, Esshaki met the filing deadline and the signature requirement, and surely knew or should have known before the Court's order that he had or was likely to meet the requirement. Thus, there was no factual or legal basis upon which the Court could ground its order to reduce the signature requirement, and granting such relief was an abuse of discretion.

But even if that reliance was not an abuse of discretion per se, the Court nevertheless went beyond what was necessary to alleviate Plaintiff's burden as alleged under the circumstances.  While the Court concluded that § 544f contributed to the severe burden imposed on Plaintiff, that conclusion did not necessarily compel the conclusion that any remedy include a reduction in required signatures.  The reduction in signatures is an unprecedented disruption to the established and traditional process for candidates to gain ballot access in Michigan. The State has a compelling interest in requiring candidates to demonstrate the required modicum of support as established by the Legislature.  *See Jenness v. Forton*, 403 U.S. 431, 442 (1971) ("There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a [ ] candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election."); *Bullock v. Carter*, 405 U.S. 134, 145 (1972); *American Party of Texas v. White*, 415 U.S. 767, 783 (1974); *Munro v. Socialist Workers Party,* 479 U.S. 189, 194 (1986); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 367 (1997).  Recognizing that to be the case, the State Defendants proposed to the Court the less disruptive option of extending the administrative filing deadline.  And combined the extension with an additional option of

permitting candidates to collect and file signatures by email, along with the pre-existing method of circulating by U.S. mail.

The extension of the filing deadline to May 8, and the implementation of a simple process permitting candidates to collect and file signatures via email, in addition to the mail option already available and in use by candidates, would have been sufficient to alleviate the alleged burden to Plaintiff Esshaki.  It was thus unnecessary, and an abuse of discretion, for the Court to impose the additional remedy of a signature reduction.  Indeed, the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."  *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 2020 WL 1672707 (U.S., April 6, 2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (*per curiam*); *Frank v. Walker*, 574 U.S. 929 (2014); *Veasey* v. *Perry*, 574 U. S. __, 135 S. Ct. 9 (2014)).  While the State was not necessarily on the eve of the August 4, 2020 primary election, the Court's order was on the eve of the filing deadline, and significantly altered the rules for candidates by substantially lowering the signature threshold.  The 50% reduction presents an opportunity for frivolous candidacies, voter confusion, and a cluttered ballot, even under current conditions.  *See, e.g., Libertarian Party of Ky v. Grimes*, 835 F.3d 570, 577 (6th Cir. 2016) (States have "an important interest in ensuring that candidates demonstrate a 'significant modicum of support,' before gaining access to the

ballot, primarily in order to avoid voter confusion, ballot overcrowding, and frivolous candidacies.

Finally, the Court's imposition of a 50% signature reduction went beyond Plaintiff's requested 40% reduction. The Court, without any discernable basis, concluded that a reasonably diligent candidate should have expected to reach the halfway point for signature gathering with a month remaining before the deadline, and held that the number of signatures required should similarly be reduced by 50%. (R. 23, Injunction Order, Page ID # 358).

The Supreme Court recently reversed portions of an injunction in an elections case in part because the court granted relief that the plaintiffs had not even requested. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 2020 WL 1672707 at *1 (U.S., April 6, 2020) ("Our point is not that the argument is necessarily forfeited, but is that the plaintiffs themselves did not see the need to ask for such relief. By changing the election rules so close to the election date and by affording relief that the plaintiffs themselves did not ask for in their preliminary injunction motions, the District Court contravened this Court's precedents and erred by ordering such relief."). The same is true here. Thus, the Court erred or abused its discretion in ordering a 50% reduction in signatures.

**B.     The State Defendants will be irreparably harmed absent a stay and the public interest weighs in favor of a stay.**

The Supreme Court has recognized that "anytime a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, *3 (2012) (C.J. Roberts in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co*., 434 U.S. 1345, 1351 (1977).  The election law enjoined by the Court, Mich. Comp. Laws § 168.544f, was duly enacted by the Michigan Legislature.  Moreover, the people have an interest in the fair and orderly holding of elections.  These factors thus weigh in favor of staying the injunction.  *See Nader v. Blackwell*, 230 F.3d 833, 835 (6th Cir. 2000) (noting that "[a] state's interest in proceeding with an election increases as time passes, decisions are made, and money is spent.").

Finally, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay.  Simply stated, more of one excuses less of the other." *Michigan Coal of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).  Given that Plaintiff is unlikely to succeed on the merits on appeal, *see* the arguments presented in II.A., Defendants have a lower burden concerning their irreparable harm.

26

**C.      The threat of harm to others is outweighed by the other factors.**

The Court's injunction applies to any non-party candidate that meets the terms of the Court's order.  (R. 23, Injunction Order, Page ID ## 359-360.)  This means that candidates other than Plaintiff Esshaki could benefit from the Court's signature reduction, but the number of such individuals is unknown.  These candidates, however, will still benefit from the Court's extension of the filing deadline and the additional opportunity to collect and file signatures electronically via email—even though there now exists little to no record evidence that a candidate would be prevented from collecting the requisite number of signatures during the pandemic—especially given the extension of deadlines.  Further, as discussed above, the likelihood of success and irreparable harm factors weigh in favor of Defendants, and thus outweigh the indistinct harm to other candidates.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, Defendants Governor Gretchen Whitmer, Secretary of State Jocelyn Benson, and Director of Elections Jonathan Brater respectfully request that this Honorable Court grant their motion for limited relief from the Court's order granting Plaintiff Esshaki a preliminary injunction under Fed. R. Civ. P. 60(b).  Alternatively, if the Court denies the request for relief under Rule 60(b), Defendants request that the Court stay that portion of the injunction

reducing the signature thresholds by 50% pending Defendants appeal to the Sixth

Circuit.

Respectfully submitted,

DANA NESSEL
Attorney General

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  meingasth@michigan.gov
Dated:  April 22, 2020                                      P55439

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2020, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  meingasth@michigan.gov
P55439