UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ERIC ESSHAKI**, as candidate for United States Congress and in his individual capacity;<br>**MATT SAVICH**, as candidate for the Forty-Seventh District Court, Oakland County, Michigan and in his individual capacity;<br>**DEANA BEARD**, as candidate for the Third Circuit Court Judge, Regular Term, Non-Incumbent Position in Wayne County and in her individual capacity.<br><br>           Plaintiffs,<br><br>vs.<br><br>**GRETCHEN WHITMER**, Governor of Michigan;<br>**JOCELYN BENSON**, Secretary of State of Michigan; and<br>**JONATHAN BRATER**, Director of the Michigan Bureau of Elections, in their official capacities,<br><br>           Defendants. | 2:20-CV-10831-TGB<br><br><br>**ORDER DENYING DEFENDANTS' RULE 60(b) MOTION AND REQUEST FOR STAY PENDING APPEAL** |

Before the Court is Defendants' Emergency Motion Under Rule 60(b) for Limited Relief from the Court's Order Granting Preliminary

Injunction, or Alternatively for a Stay Pending Emergency Appeal. ECF No. 26.

## I. State's Requests for 60(b) Relief or Stay Pending Appeal

The State Defendants, citing new evidence not available to the State or the Court at the time of the Court's April 20, 2020 Order, request that this Court either amend its April 20, 2020 Order granting a preliminary injunction to omit the Court's 50% signature reduction, or stay execution of that part of the Order pending appeal to the United States Court of Appeals for the Sixth Circuit. ECF No. 26.

The State contends that the new evidence—Mr. Esshaki's April 21st filing of 1,263 signatures—demonstrates that the 50% signature reduction by the Court was unnecessary. ECF No. 26, PageID.377-78; Malerman Decl. ¶ 6, ECF No. 26-2, PageID.414. The State argues that had this Court had evidence regarding Mr. Esshaki's late signature-gathering success, it would not have issued its April 20, 2020 injunction. *Id.*

## II. New Evidence

This Court issued its injunction on April 20, 2020. ECF No. 23. On April 21, 2020, Mr. Esshaki personally appeared in Lansing and presented 1,263 signatures to the State's Bureau of Elections. Malerman Decl. ¶¶ 4, 6, ECF No. 26-2, PageID.410, 14. According to the State, of the signatures Plaintiff had gathered, 242 appeared to have been signed in-person after the March 23rd Stay-at-Home Order was issued. *Id.* ¶ 5(e). An additional 228 signatures appeared to have been gathered by mail between April 7th and April 19th. *Id.* ¶ 5(g).

In response to the State's emergency motion, the Court held a hearing over the digital platform Zoom on April 23, 2020, and permitted the parties and amici curiae to submit additional briefing by noon on April 24, 2020. Such papers were timely filed and included briefing from the State (ECF No. 34), Mr. Esshaki (ECF No. 33), Mr. Savich (ECF No. 31), Ms. Beard (ECF No. 36) and the ACLU of Michigan, which submitted the declaration of Mr. Dennis Donahue (ECF No. 35).

In response to the instant Motion, Mr. Esshaki states that the facts he presented to the Court on April 15th as to the number of signatures he had gathered and the effectiveness of his mail campaign were based

on the information he had at the time. Esshaki Decl. ¶ 4, 9, ECF No. 33, PageID. 502-03. Esshaki said he achieved the signature requirements previously considered impossible because of the "heightened press coverage" from this lawsuit, which he believes "had an impact on grass roots interest in filling out and delivering petitions" to his campaign. *Id.* ¶ 10. Esshaki states that he mailed approximately 2,000 blank petition forms at a cost of $4,800, and that the overall response rate for mailed petitions was approximately 20%, but that it was likely that half of the mailed petitions contained technical defects rendering them invalid. Esshaki Decl. ¶¶ 5, 8, 20, PageID.502-06. He further states that other petitions were left in his mailbox, *Id.* ¶ 15, and he gathered additional signatures personally while taking walks.

In Mr. Savich's supplemental declaration, he states that as of the date of the Stay-at-Home Order, March 23, 2020, he had 219 of the 400 signatures he needed to get his name on the ballot. Savich Decl. ¶ 1, ECF No. 31, PageID.451. As of April 21, 2020, he had obtained 326 signatures, of which he estimates 260 are valid. *Id.* ¶ 2. He did not attempt to obtain signatures by mail. *Id.* ¶ 3.

Ms. Beard states that at the time the Stay-at-Home Order went into effect, she had 3557 of the 4,000 signatures she needed to get on the ballot. Beard Decl. ¶ 1, ECF No. 36, PageID.573. She estimates that at the rate her campaign was collecting signatures before the Stay-at-Home Order, she would have collected at least 6,200 signatures if not for the Stay-at-Home Order. Beard Br., ECF No. 36, PageID.557. On April 21, 2020, she submitted 3610 signatures. Beard Decl. ¶ 2, ECF No. 36, PageID.573. She sent out three petitions by mail and received none back. *Id.* ¶ 3, 5. She states that absent the Court's 50% reduction, "there is literally no way" she would be able to obtain the required number of signatures, even with the ability to obtain electronic signatures. Beard Br., ECF No. 36, PageID.565.

The ACLU submitted the declaration of Mr. Donahue, a judicial candidate for the Wayne County Circuit Court. ECF No. 35-1. Mr. Donahue states that at the time the Stay-at-Home Order was issued, he had obtained 1,100 of the 4,000 signatures he needed to get on the ballot. Donahue Decl. ¶¶ 8, 12, ECF No. 35-1, PageID.543-44. He had obtained 1,000 signatures in ten days, and planned to collect 5,000 signatures so as to ensure a comfortable cushion after challenges. *Id.* ¶ 7, 8. Mr.

Donahue states that after consulting with a canvassing agent, he believes that in order to obtain 3,000 signatures by mail, he would likely have to mail between 30,000 and 60,000 letters, at a cost of $17,400 to $34,800. *Id.* ¶ 17. Donahue states that he cannot afford such a mail campaign, and as a result of the restrictions put in place by the Stay-at-Home Order, he has only obtained a handful of signatures since March 23, 2020. *Id.* ¶ 19. Donahue states that absent the Stay-at-Home Order, he would have collected enough signatures to earn a place on the ballot, but that because he cannot afford a mail-only campaign, the only way he would be able to qualify for the August 4, 2020 ballot is if the 50% signature reduction ordered by the Court remains in effect. *Id.* ¶ 21.

Finally, the State submitted supplemental briefing regarding the signatures that Mr. Esshaki gathered after oral argument on April 15, 2020 and also cited the mail signature campaign of Judge Kathleen Feeney, who apparently obtained 57% of her 4,000 signatures by mail after April 5, 2020. Malerman Decl. ¶ 28, ECF No. 34-2, PageID.537. The State's briefing does not contain any information regarding how much money Judge Feeney spent on her mail campaign or how many pieces of mail she sent out.

## III. Discussion

### *a. Rule 60(b)(2) Motion*

Federal Rule of Civil Procedure 60(b)(2) provides that "[o]n motion and just terms, the court may relieve a party . . . from a[n] . . . order" based "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). To prevail on a motion under Rule 60(b)(2) based on newly discovered evidence, a party "must demonstrate (1) that it exercised due diligence in obtaining the information and (2) [that] the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (quoting *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998)).

The State correctly points out that the Court's April 20, 2020 Order primarily referenced the arguments made by Mr. Esshaki. The State is incorrect, however, that the new evidence it cites would have produced a different result regarding the Court's ultimate decision to reduce the signature requirement by 50%. This is in large part because the State's contention that Mr. Esshaki was the only Plaintiff this Court was

considering when it reduced the signature requirement by 50% is mistaken. In fact, when discussing the appropriate reduction, and Esshaki's 40% suggestion, the Court explicitly stated that "[e]ven such a [40%] reduction, however, would still present a significant hurdle for otherwise viable candidates, including those whose signature requirements are lower than Plaintiff's." ECF No. 23, PageID.357. The Court then referenced Ms. Bannister, an Ann Arbor City Councilwoman who had gathered only 40 of the 100 signatures she needed at the time the Stay-at-Home order was issued. *See id.*; Bannister Decl. ¶ 11, ECF No. 15-2. Elsewhere in the Order, the Court explicitly referred to Plaintiffs Savich and Beard, as well as Mr. Finley, who had filed an amicus brief in this matter. The Court considered then, as it does now, that as of March 23, 2020, Mr. Savich had only collected 219 of the 400 signatures required to get his name on the ballot, Savich Decl. ¶ 1, ECF No. 31, PageID.451, Ms. Bannister had collected 40 of 100, Bannister Decl. ¶ 11, ECF No. 15-2, Mr. Finley 300 of 1000, ECF No. 32, PageID.497 and Ms. Beard 3557 of 4,000, Beard Decl. ¶ 1, ECF No. 36, PageID.573. During the hearing Mr. Finley also raised the point that, based on his knowledge, only one of the five candidates seeking to qualify for the

8

judgeship he was seeking had been able to gather a sufficient number of signatures. Finley Br., ECF No. 13, PageID.212. In arriving at the 50% reduction, the Court considered the challenges those candidates would face gathering additional signatures—even assuming the existence of a digital signature option and an extended deadline—and factored in each candidate's need to collect signatures above the minimum statutory threshold in order to have a "cushion" in case a significant number of signatures should be invalidated.

The "new" information cited by the State and the supplemental declarations filed April 24th do not—and would not have—changed the Court's decision to reduce that signature requirement to 50% of the statutory requirement. First, Mr. Esshaki's last-minute success in receiving signatures through the mail suggests that the postal service in his area may be operating more efficiently than had earlier been reported.[1] It is not evidence that the same can be said for the entire State, where delays continue to be reported.[2] As the Court stated in its

---

[1] *Some SE Michigan zip codes to receive mail every other day due to COVID-19*, Fox2Detroit (Apr. 9, 2020), https://www.fox2detroit.com/news/some-se-michigan-zip-codes-to-receive-mail-every-other-day-due-to-covid-19.

[2] *See, e.g.*, *Oakland County Residents Report Delays in Mail Delivery*, Oakland Press (Apr. 22, 2020) https://www.theoaklandpress.com/news/coronavirus/oakland-county-residents-report-delays-in-mail-delivery/article_be9362,96-840d-11ea-bf7a-731dcf043be3.html.

Order, the ability of the Postal Service to deliver mail efficiently during this pandemic is an unknown, and there is reason to doubt that it is operating at its usual capacity.

Second, that Mr. Esshaki successfully funded two 1000-petition mail campaigns cannot be considered as evidence that such an option is equally available for many candidates. Mr. Esshaki spent $4,800 on mailings, and his experience suggests that a mail campaign may yield approximately a ten percent valid signature return rate. *See* Esshaki Decl. ¶¶ 5, 8, 20, PageID.502-06. Mr. Esshaki was fortunate in that he only needed to gather a few hundred additional signatures by mail. Mr. Donahue, a judicial candidate who was able to obtain 1,000 signatures in ten days before the Stay-at-Home Order, would need to collect 3,000-4,000 by mail in order to meet the statutory requirements and have a cushion should any signatures be deemed invalid. Donahue Decl. ¶ 8, 16, ECF No. 35-1, PageID.543-45. Such a mailing would cost him between $17,400 and $34,800, which his campaign cannot afford. *Id.* ¶ 17, 19. Without a 50% reduction, he will be left off the ballot.

Third, Esshaki's apparent success in obtaining approximately 242 signatures by means other than the mail since April 9, 2020 does not tip

the scales in favor of the State. For one, as Mr. Esshaki hypothesized, this effect could be unique to him, as he believes that the publicity he garnered from this lawsuit may have caused individuals to sign his petitions and leave them in his mailbox. Esshaki Decl. 10, ECF No. 33, PageID. 503-04. Other candidates have not reported signature petitions spontaneously appearing in their mailboxes. Moreover, while Esshaki stated at oral argument on April 23rd that the signatures he personally gathered during the lockdown were obtained while on walks permitted by the Stay-at-Home Order, he could not account for how all of his circulators gathered their signatures during this time. *If* any of these signatures had to be gathered by means that violated the Stay-at-Home Order, surely such success in "lawlessly" gathering signatures should not be considered proof that there is no need to reduce the signature requirement. Indeed, testimony in this case describes the extreme lengths that candidates have been forced to go to in order to collect in-person signatures by means that do not violate the Stay-at-Home Order. For example, one candidate described "me[eting] supporters in parking lots and open spaces, where they threw plastic bags of completed petitions for me to catch." Bannister Decl. ¶ 34, ECF No. 15-2,

11

PageID.278. Even putting aside the fact that such a candidate would be leaving his or her home for a purpose not clearly permitted by the Stay-at-Home Order, such means are clearly not scalable for candidates who need to collect thousands of signatures.

For these reasons, the Court would not have reached a different conclusion on the 50% reduction had it had the new information cited by Defendants at the time it issued its April 20, 2020 Order.

### b. Request to Stay Reduction Pending Appeal

A court considering a request to stay pending appeal of the grant of a preliminary injunction must consider:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. All four factors are not prerequisites but are interconnected considerations that must be balanced together. [473 F.3d 237, 244 (6th Cir. 2006) (citations omitted).]

*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006) (citations omitted).

The State asserts that this Court abused its discretion by granting Plaintiffs' motion for a preliminary injunction because "lower federal courts should ordinarily not alter the election rules on the eve of an

election." ECF No. 26, PageID.400 (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 2020 WL 1672707 (U.S., April 6, 2020)). While this may ordinarily be true, as the State concedes, we are not on the eve of an election. The primary is not until August 4, 2020. The State is unlikely to prevail on appeal in showing that the Court abused its discretion on these grounds. Regarding whether the State will be irreparably harmed in the absence of a stay, the State asserts that the reduction in signatures is "an unprecedented disruption to the established and traditional process for candidates to gain ballot access in Michigan." ECF No. 26, PageID.399. The Court invited the State during oral argument to substantiate this assertion, but it was unable to do so. Far from demonstrating harm, the State ignores the glaring inequity at the heart of this case: Before the Court is evidence from multiple candidates that *but for the State's own last-minute intervention* in the homestretch of the signature gathering time period, the Plaintiffs in this case would have been able to gather enough signatures to secure a place on the August 4, 2020 primary ballot. If there had not been a March 23, 2020 Stay-at-Home Order, this case would not exist.

Yet, despite the enormity of the obstacle the March 23, 2020 Stay-at-Home Order erected to block the signature-gathering efforts of candidates, the State has refused to budge on reducing the signature requirement. Initially, the State opposed any and all relief for Plaintiffs. ECF No. 6. If the Court had not granted injunctive relief, Ms. Beard, Mr. Savich, and Mr. Donahue all would have already been eliminated from the ballot, since none had met the statutory signature requirements as of April 21, 2020. Each presented evidence that absent the Stay-at-Home Order, they very likely would have collected enough signatures to make it onto the ballot. Consequently, the Court was forced to fashion a remedy. As this very Motion demonstrates, the operative facts in this once-in-a-generation pandemic are constantly changing, and many important variables, such as the current operating capacity of the Postal Service, the viability of electronic-based signature gathering, and whether Governor Whitmer would extend the Stay-at-Home Order to cover the extended signature gathering period, were unknowns at the time the Court reduced the signature requirement down to 50%. Except

14

for the extension of the Stay-at-Home Order,[3] the others are still unknowns.

In this uncertain context, after considering the information the Court had regarding Mr. Esshaki, Ms. Beard, Mr. Savich, and other candidates through the several amicus curiae briefs filed in this case, the Court reduced the signature requirement by 50%. Evidence in the record then and now shows that for reasons already discussed regarding the viability of other signature collecting options, a reduction of anything less than 50% would likely keep Ms. Beard, Mr. Savich, Mr. Donahue and possibly Ms. Bannister and Mr. Finley off the ballot, despite their signature collecting diligence prior to the Stay-at-Home Order. These candidates—two of whom are parties—requested relief that would make it possible for them to appear on the August 4, 2020 primary ballot, and the Court granted such relief. It is clear that they and other candidates like them would be harmed if a stay were to be granted. Nor would the public interest in the fair administration of ballot access requirements be served by a stay of the Court's order. Consequently, the Court finds that

---

[3] On April 24, 2020 the Governor signed Executive Order 2020-59, which extends the stay-at-home restrictions through May 15, 2020. Mich. Exec. Order 2020-59. The extension ensures that traditional, in-person door-to-door signature gathering will remain a criminal offense for the entirety of the signature gathering extension.

15

the 50% reduction is warranted, and Defendants have failed to demonstrate that they are likely to prove this Court abused its discretion in reducing the signature requirement by 50% on appeal. The request for a stay will therefore be denied.

## IV. Conclusion

For the reasons above, Defendants' Emergency Motion Under Rule 60(b) for Limited Relief from the Court's Order Granting Preliminary Injunction, or Alternatively for a Stay Pending Emergency Appeal (ECF No. 26) is **DENIED**.

**IT IS SO ORDERED.**

DATED this 25th day of April, 2020.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge