**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: May 05, 2020

Ms. Deana Beard
2885 S. Trenton Drive
Trenton, MI 48183

Mr. Michael S. Cafferty
333 W. Fort Street, Suite 1100
Detroit, MI 48226

Mr. Eric Esshaki
1731 Hazel Street
Birmingham, MI 48009

Mr. Erik A. Grill
Ms. Heather S. Meingast
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909

Mr. Gregory J Rohl
41850 W. Eleven Mile Road, Suite 101
Novi, MI 48375-1819

Re: Case No. 20-1336, *Eric Esshaki v. Gretchen Whitmer, et al*
Originating Case No. : 2:20-cv-10831

Dear Counsel and Ms. Beard,

The Court issued the enclosed order today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Mr. David J. Weaver

Enclosure

**Case No. 20-1336**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
May 05, 2020
DEBORAH S. HUNT, Clerk

**ERIC ESSHAKI, et al.,**

***Plaintiffs-Appellees,***

**MATT SAVICH, et al.,**

***Intervening Plaintiffs-Appellees,***

**v.**

**GRETCHEN WHITMER, Governor of Michigan, et al.,**

***Defendants-Appellants.***

**ORDER**

Before: BATCHELDER, STRANCH, and BUSH, Circuit Judges.

**The Panel delivered an order. STRANCH, J. (pp. 5–10), delivered a separate opinion concurring in part and dissenting in part.**

The nominal defendant in this case, the State of Michigan (hereinafter the "State"), moves to stay a preliminary injunction pending appeal. We GRANT the motion in part and issue stay as to the injunction's three compulsory directives that re-write the statute, but we DENY the remainder of the motion and uphold the core of the injunction, which enjoins the State from enforcing the statute's two ballot-access provisions at issue unless the State provides some reasonable accommodation to aggrieved candidates.

The plaintiffs are potential political candidates for certain State and National elected offices and, toward that end, were attempting to satisfy Michigan's statutory requirements to have their names placed on the ballots for the primaries in August. The two statutory requirements at issue (hereinafter the "ballot-access provisions") are M.C.L. § 168.133, which requires potential primary

candidates to obtain a certain number of valid signatures by April 21, and § 168.544f, which specifies the number of signatures required for individual races. The plaintiffs assert that the State's emergency Stay-at-Home Orders, Mich. Exec. Order 2020-21, *et al*., issued in response to the COVID-19 pandemic, prevented them from collecting the signatures they needed to satisfy the ballot-access provisions during the timeframe between imposition of the first Stay-at-Home Order on March 23 and the April 21 deadline for filing the signatures. Moreover, because the State intended to enforce the ballot-access provisions strictly, without exception for or consideration of the COVID-19 pandemic or the Stay-at-Home Orders, the plaintiffs sued in federal court, claiming that such enforcement, under the present circumstances, is an unconstitutional infringement on their (and voters') rights to association and political expression, and thus seeking relief from such enforcement. *Esshaki v. Whitmer*, 2020 WL 1910154 (E.D. Mich. Apr. 20, 2020).

In deciding this claim, the district court properly applied the *Anderson-Burdick* test, *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992), which applies strict scrutiny to a State's law that severely burdens ballot access and intermediate scrutiny to a law that imposes lesser burdens. The district court correctly determined that the combination of the State's strict enforcement of the ballot-access provisions and the Stay-at-Home Orders imposed a severe burden on the plaintiffs' ballot access, so strict scrutiny applied, and even assuming that the State's interest (i.e., ensuring each candidate has a reasonable amount of support) is compelling, the provisions are not narrowly tailored *to the present circumstances*. Thus, the State's strict application of the ballot-access provisions is unconstitutional as applied here.

The district court concluded that "it is appropriate to enjoin [the State] from rigid application of those particular statutes, as well as any others that are substantively identical in causing the same kind of irreparable harm to similarly situated individuals." *Esshaki*, 2020 WL 1910154, at *10. Restated another way, the district court's order enjoined the State from enforcing

the ballot-access provisions at issue unless the State provides some reasonable accommodations to aggrieved candidates. We agree and do not stay the part of the preliminary injunction that prohibits enforcement of the ballot-access provisions of the statute.

But the district court went further and, through a plenary re-writing of the State's ballot-access provisions, ordered the State to do three specific things concerning the manner in which it will conduct this ballot access, namely it: (1) reduced the number of signatures required by 50%; (2) extended the deadline for filing the signatures to May 8; and (3) ordered the State to permit the collection of signatures through the use of electronic mail. *Esshaki*, 2020 WL 1910154, at *10. This compulsory aspect of the preliminary injunction was not justified. Simply put, federal courts have no authority to dictate to the States precisely how they should conduct their elections. *See Clingman v. Beaver*, 544 U.S. 581, 586 (2005) ("The Constitution grants States broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices." (citations and quotation marks omitted)). This is the States' constitutionally protected right.

Therefore, we conclude that the State is likely to succeed on the merits and will be irreparably harmed if forced to comply with this re-writing of its ballot-access provisions, that neither the plaintiffs nor others similarly situated will be harmed by staying this portion of the injunction given that the prohibition in the injunction remains, and that the public interest is furthered by protecting the State's constitutionally guaranteed authority and preventing a federal court from usurping a State's legislative authority by re-writing its statutes. *See A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 917 (6th Cir. 2018) (reciting the standard for staying a preliminary injunction). Therefore, we grant the stay as to this compulsory part of the preliminary injunction.

By staying the compulsory part of the injunction but upholding the prohibitive part, we are instructing the State to select its own adjustments so as to reduce the burden on ballot access,

Case: 20-1336 Document: 21-2 Filed: 05/05/2020 Page: 4

narrow the restrictions to align with its interest, and thereby render the application of the ballot-access provisions constitutional under the circumstances. We recognize that it was the State that proposed to the district that it could extend the deadline (to May 8) and permit signatures by electronic mail, but the district court apparently found that insufficient to reduce the burden, given that the court also imposed the third requirement (the 50% signature reduction). The court did, however, conclude that its three requirements would together sufficiently reduce the burden and satisfy the Constitution. Thus, the State could adopt the same three-part adjustment that the district court ordered, and we just stayed, because the point is not that the adjustments were right or wrong (or too much or too little), but that the federal court cannot impose such specific manner-of-election requirements on a State without breaching the express delegation of authority in the Constitution. While we need take no position on the efficacy of the district court's proffered adjustments, that court has already made itself clear on how it sees this, thus giving the State some guidance.

For the reasons stated, we GRANT the motion in part and issue the stay as to the portion of the preliminary injunction compelling the State to adopt the district court's revisions of the ballot-access provisions, but we DENY the remainder of the motion and uphold the portion of the injunction that enjoins the State from enforcing the statute's two ballot-access provisions under the present circumstances, unless the State provides some reasonable accommodation to aggrieved candidates.

**JANE B. STRANCH, Circuit Judge, concurring in part and dissenting in part.** I concur in the majority's conclusion that the district court correctly applied the *Anderson-Burdick* test and acted within its authority to enjoin enforcement of the statute's two ballot-access provisions in conjunction with the State's stay-at-home order. My disagreement with the majority stems from its decision to undertake plenary analysis of the lower court's affirmative injunction. There is a single issue before this court—the State's motion asks only that we "grant their emergency motion for a stay pending appeal of that portion of the injunction reducing the signature thresholds by 50%." The State does not challenge the district court's extension of the filing deadline or allowance of electronic signatures. The majority's plenary analysis of and rulings on the lower court's affirmative injunction are not appropriate. And its de novo revision of that order, despite the abuse of discretion standard that governs, conflicts with the Supreme Court's governing precedent and our own. In addition, the analysis fails to account for the irreparable harm prongs of our review. I therefore respectfully dissent in part.

The long history of federal injunctive relief, including affirmative relief, in comparable situations is uncontestable. Since at least 1908, the Supreme Court has held that Plaintiffs may bring suits against state officials seeking prospective relief to end continuing violations of federal law. *See, e.g.*, *Ex Parte Young*, 209 U.S. 123 (1908); *see also Green v. Mansour*, 474 U.S. 64 (1985). A federal court's ability to redress a plaintiff's claim is built into the court's Article III jurisdiction and the requirement that a plaintiff have standing to sue. *Marbury v. Madison*, 5 U.S. 137, 163, 2 L. Ed. 60 (1803) ("it is a general and indisputable rule, that where there is a legal right, there is also a legal remedy."); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that it "must be 'likely,' as opposed to merely 'speculative,' that the [plaintiff's] injury will be 'redressed by a favorable decision.'").

Specific and practical federal injunctions against state actors have thus been deemed appropriate under circumstances ranging from ballot access and reapportionment cases to school integration and prison reform. *See, e.g.*, *Anderson v. Celebrezze*, 460 U.S. 780 (1983) (concluding that absent an injunction ordering a candidate's name be placed on the ballot, the candidate and his supporters would suffer a constitutional injury from Ohio's ballot access requirements); *Reynolds v. Sims*, 377 U.S. 533 (1964) (affirming an injunction requiring Alabama legislators to conduct an election under an apportionment scheme specified in the district court's order); *Milliken v. Bradley*, 433 U.S. 267 (1977) (concluding that the district court did not abuse its discretion in ordering a remedial education plan, which adopted specific programs proposed by local school authorities, to redress de jure school segregation); *Hutto v. Finney*, 437 U.S. 678 (1978) (finding that a district court did not abuse its discretion in compelling a 30-day limit on solitary confinement to remedy a state prison's ongoing Eighth Amendment violations).

The majority's determination that the State is likely to succeed on the merits of its appeal is premised on the inaccurate view that lower courts may issue only "prohibitive" rather than "compulsory" injunctions against state officials. To the contrary, Supreme Court jurisprudence has consistently approved of both negative injunctions that instruct a defendant not to act and mandatory injunctions that instruct states to take particular action. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493, 511 (2011) (reaffirming that if a state government fails to fulfill its obligation to provide prisoners with basic sustenance and adequate medical care, "the courts have a responsibility to remedy the resulting Eighth Amendment violation" through equitable relief and approving a court-mandated reduction in the prison population over a two-year implementation period); *see also Brown v. Board of Educ. II*, 349 U.S. 294, 300–01 (1955) (holding that the constitutional violation should be remedied with "all deliberate speed," and with reliance on the "traditional attributes of equity power.").

Case: 20-1336 Document: 21-2 Filed: 05/05/2020 Page: 7

The principle that a state has broad power to conduct its elections for both federal and state offices is not in dispute. The assertion that a state's power to manage elections is absolute even when that authority implicates other constitutional rights, however, is at odds with governing precedent. Although election administration is typically left to state legislatures, the Supreme Court has identified circumstances in which federal courts must intervene to remedy ongoing constitutional violations. For example, where the one-person, one-vote doctrine is implicated or a plaintiff alleges racial gerrymandering, district courts are tasked with drawing up reapportionment plans. *Wesberry v. Sanders*, 376 U.S. 1 (1964); *Shaw v. Reno*, 509 U.S. 630 (1993). In reviewing reapportionment interventions, the Court has never concluded that lower courts lack the authority to compel constitutional compliance through affirmative injunctions.

If the Supreme Court believed that a district court could not compel a state to take specific steps to remedy a constitutional voting-rights violation, it would have said so in its recent order addressing Wisconsin's approach to the primary election during the COVID-19 pandemic. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1206 (2020). In that case, the Court left in place an extension of the absentee ballot deadline from Tuesday, April 7, 2020 to Monday, April 13, 2020. And, as is true here, the extension in that case was not challenged. The Court did stay certain aspects of the preliminary injunction, based on its long-recognized timing concern that "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Id.* at 1207. It also took issue with the injunction as overly broad (going beyond what the plaintiffs themselves requested, *id.*), but it did not suggest that the lower court lacked the authority to craft an appropriate affirmative remedy in accord with the record. We should apply the Supreme Court's inquiry here by considering whether the evidence supports the challenged signature requirement of the district court's injunction and whether the order would improperly alter "rules on the eve of an election," here, a primary election still months away. We should not,

however, stay the district court's remedy based on the erroneous premise that the court lacked authority to reduce the signature threshold. *Id.* Likewise, we certainly should not apply this mistaken ground to the other aspects of the court's order—the filing deadline extension and allowance for electronic signature collection—which are not challenged here.

Following the Supreme Court's jurisprudence, this court has affirmed the lower courts' capacity to craft appropriate and specific remedies in ballot-access and voting-rights cases, among other scenarios. *See, e.g, Michigan State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 661 (6th Cir. 2016) (denying Michigan a stay of a preliminary injunction ordering that it reinstate ballot used in an earlier election because the new ballot was likely to cause voter confusion); *Graveline v. Johnson*, 747 F. App'x 408, 414 (6th Cir. 2018) (denying Michigan a stay of a preliminary injunction requiring that a candidate's name be placed on the ballot if certain conditions were met); *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir. 1999) (acknowledging that a district court's remedial power to issue "an affirmative injunction ordering" a state "to offer voting devices assuring full privacy to blind voters would affect the state treasury because it would require Michigan to purchase such devices," but explaining that "this potential effect" did not trigger Eleventh Amendment immunity). "A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985).

In this context, at issue is whether the district court abused its discretion in granting the preliminary injunction as to the number of signatures required. *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 380 (6th Cir. 2008) (explaining that in determining whether to stay a preliminary injunction we first ask whether the moving part is (1) "likely to be able to show that the district court abused its discretion in granting the preliminary injunction."). If we apply this standard, I do

Case: 20-1336 Document: 21-2 Filed: 05/05/2020 Page: 9 (10 of 11)

not believe the State Defendants are likely to show an abuse of discretion and succeed on the merits of this appeal. The district court's approach, moreover, built in protections to prevent abuse of the injunction by ordering that it applies only to those candidates who had filed their statement of candidacy with the FEC or under Michigan law by March 10, 2020. The practical realities of the COVID-19 pandemic and the State's stay-at-home order both created this unusual issue and serve to limit the district court's relief, making it unlikely that candidates without a modicum of support would have qualified to appear on the ballot.

The majority's approach also fails to account for the additional factors we are to consider when deciding whether to stay a preliminary injunction—"(2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir.1991)). I am especially concerned that modifying the lower court's injunction with an instruction to the State to select "reasonable accommodations to aggrieved candidates" will fail to redress Plaintiffs' claims and will lead to significant confusion. For example, the majority's order grants relief beyond that requested, including reinstatement of the now-past April 21 filing deadline. That action is needlessly confusing and may well trigger candidates who otherwise could have demonstrated a modicum of support to be left off the August ballot. Unless the State chooses to accommodate candidates by extending the now past deadline and reducing the signature threshold, the Plaintiffs and amici will likely be eliminated from the ballot.[1] As a result, not only would the candidates' right to associate

[1] The intervening Plaintiffs had not met the statutory signature requirements as of April 21, 2020 and will certainly not appear on the ballot without a deadline extension or other accommodations. So too for judicial candidate Dennis Donahue who submitted a declaration on behalf of the ACLU of Michigan. Although Plaintiff Esshaki timely filed more signatures than required, he "did not have time to properly vet these

for the advancement of their political beliefs be harmed, but so would the rights of voters who seek to cast their votes effectively. *Williams v. Rhodes*, 393 U.S. 23, 30–31 (1968). The likelihood that the Plaintiffs and public will be harmed by a partial stay outweighs the chance that the State's interest in protecting the efficacy of the ballot will be impacted.

For these reasons, I respectfully dissent as to the majority's plenary analysis of and rulings on the lower court's affirmative injunction.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk

signatures to ensure that they met all the technical requirements." All candidates will face the difficulty of predicting the "cushion" needed to ensure sufficient valid signatures.