UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ERIC ESSHAKI**, <br><br> Plaintiff; <br><br> **MATT SAVICH**, **DEANA BEARD**, **SHAKIRA HAWKINS**, and **LYNN MAISON**, <br><br> Plaintiff-Intervenors, <br><br> vs. <br><br> **GRETCHEN WHITMER**, Governor of Michigan; **JOCELYN BENSON**, Secretary of State of Michigan; and **JONATHAN BRATER**, Director of the Michigan Bureau of Elections, in their official capacities, <br><br> Defendants. | 2:20-CV-10831-TGB <br><br><br> **ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION; MOTION TO INTERVENE; MOTION TO FILE SUR-REPLY** |

Before the Court are Shakira L. Hawkins' Motion for Preliminary Injunction (ECF No. 51), Lynn M. Maison's Emergency Motion to Intervene (ECF No. 58), and the State's Motion to File Sur-Reply (ECF No. 61).

I. **Motion for Preliminary Injunction**

   a. **Background**

On April 20, 2020 this Court granted Plaintiff Esshaki's motion for a preliminary injunction. ECF No. 23. The injunction was subsequently appealed by the State and partially stayed by the Sixth Circuit Court of Appeals. *Esshaki v. Whitmer*, 20-1336, 2020 WL 2185553 (6th Cir. May 5, 2020). The Sixth Circuit upheld the portion of the preliminary injunction that enjoined the State from enforcing the State's statutory signature requirements in the context of the COVID-19 pandemic as written, but stayed the portion of this Court's Order that compelled the State to adopt specific remedies. *Id.* at *2. In response, on May 8, 2020, the State adopted a series of accommodations: it announced that all candidates who had filed a statement of organization with the Federal Election Commission or established a candidate committee under the Michigan Campaign Finance Act by March 10, 2020 (the "March 10th deadline") would have until May 8, 2020 to file signatures, could collect signatures using electronic means, and would qualify for the primary ballot if they obtained 50% of the signatures required by statute. *May 8,*

*2020 Special Announcement*, Mich. Sec'y of State, https://www.michigan.gov/sos/0,4670,7-127-1633---,00.html.

On May 12, 2020, Plaintiff Shakira L. Hawkins filed a motion for a temporary restraining order, preliminary injunction, and permanent injunction. ECF No. 51. Ms. Hawkins, a judicial candidate for Wayne County Circuit Court, asks this Court to expand the scope of candidates eligible to benefit from the State's 50% signature reduction, extended deadline, and electronic signature gathering option by enjoining the State from enforcing the requirement that, in order to qualify for the relief offered by the State, candidates must have filed a statement of organization with the Federal Election Commission or established a candidate committee under the Michigan Campaign Finance Act by March 10, 2020. *Id.*

### b. Likelihood of Success on the Merits

This Court has already found that the combination of Governor Whitmer's March 23, 2020 Stay-at-Home Order and the State's ballot-access provisions creates a severe burden on the First and Fourteenth Amendment rights of candidates seeking access to the August 4, 2020 primary ballot. ECF No. 23, PageID.342. Though that finding was made

3

before Ms. Hawkins was a party to this case, the burden placed on Ms. Hawkins' constitutional rights is essentially the same as the burden affecting the other candidates in this matter except in one respect, which is addressed in the next paragraph. *See id.* Thus, for the reasons cited in the Court's April 20, 2020 Order, the Court will again apply strict scrutiny to the State's ballot-access provisions.

Ms. Hawkins' predicament differs from that of the other Plaintiffs in this matter in this key respect: As of March 10, 2020, though Plaintiff Hawkins had already collected approximately 3,000 signatures, she had not yet established a candidate committee under the Michigan Campaign Finance Act. Hawkins Compl. ¶¶ 17, 19, ECF No. 47, PageID.694. This meant that though Ms. Hawkins had been burdened in the exact same way as the other Plaintiffs, she was unable to avail herself of the State's 50% signature reduction, extended deadline, and electronic signature collection options. She contends that the State's March 10th deadline is unconstitutional because it would not withstand a strict scrutiny analysis. ECF No. 51, PageID.743.

In order to survive a strict scrutiny analysis, the State ballot-access provisions, including the March 10th deadline, must be narrowly tailored

to effectuate a compelling state interest.  *Lawrence v. Blackwell*, 430 F.3d 368, 373 (6th Cir. 2005).  In this case, the Court has already found that the State has a compelling interest in ensuring that candidates have a modicum of support before their names are printed on the ballot.  *See* ECF No. 23, PageID.344-45.  The March 10th deadline was initially proposed by the State before the Court heard oral argument on April 15, 2020.  The State argued then, as it does now, that the March 10th deadline effectuates the State's compelling interest by preventing opportunistic "Johnny-come-lately" candidates—who never would have otherwise run for office or been able to meet the normal statutory signature requirements—from taking advantage of the relaxed requirements in the Court's April 20, 2020 Order and deciding to file last-minute petitions.  ECF No. 55, PageID.778.  None of the parties at the time objected to the State's proposed March 10th deadline, and it was included in the Court's April 20, 2020 Order.  ECF No. 23, PageID.359. Following the Sixth Circuit's May 5, 2020 decision, the State again adopted the March 10th deadline on its own volition as part of the State's May 8, 2020 accommodations.

Now there are new facts. Before the Court is a candidate who had successfully collected more than 3,000 signatures as of March 10, 2020 but is nonetheless being prevented from obtaining the relief provided to other candidates by the provision of the State's accommodation intended to prevent opportunistic, "Johnny-come-lately" candidacies. Clearly, a candidate who had gathered more than 3,000 signatures by early March (more than any other Plaintiff in this case) is neither opportunistic nor by any stretch a "Johnny-come-lately." Indeed, all doubt was removed on that point when Ms. Hawkins filed a completed petition on April 21, 2020 containing 4,283 signatures—283 more than required by Section 168.544f. Hawkins Compl. ¶ 31, ECF No. 47, PageID.698. Ms. Hawkins' predicament vividly illustrates a concern that was voiced by multiple amici—and the Court—before the State announced its May 8, 2020 accommodations: The March 10th deadline is a poorly calibrated instrument for determining who was a serious candidate before the Court reduced the signature requirements and extended the deadline on April 20, 2020.

The State argues that Ms. Hawkins is not entitled to relief because by not establishing her candidate committee by March 10, 2020,

she violated Michigan's election laws at her own peril. ECF No. 55, PageID.783. Under Section 169.203(1)(c) of Michigan's election laws, all persons running for office must form a candidate committee after making any expenditure in furtherance of their candidacy, and Ms. Hawkins does not contest that she may have committed a *de minimis* violation of that provision by personally making small expenditures, such as those that might be necessary to make copies. Mich. Comp. Laws § 169.203(1)(c); ECF No. 49, PageID.714.

The State is certainly correct in asserting that candidates for elective office should be expected to follow state election law. This Court does not condone Ms. Hawkins' statutory violations or those of any other candidate. However, as Ms. Hawkins' situation illustrates, whether or not a particular candidate was in compliance with Michigan's candidate committee formation requirements on March 10th has little bearing on whether or not that candidate is a serious contender who—absent the pandemic—would likely have been able to gather the full number of signatures required by Section 168.544f, as Ms. Hawkins proved able to do. Mich. Comp. Laws § 168.544f. If the statutory penalty for violating the candidate committee formation requirements were exclusion from

7

the ballot, the State may have a stronger case, since no serious candidate would violate it. But it is not: the statutory penalty for failure to timely form a candidate committee is a fine capped at $1,000. Mich. Comp. Laws § 169.221(13).

Moreover, the March 10th deadline works inequities even for serious candidates who meticulously comply with the election laws. For example, if a person were to become a candidate shortly before or on March 10th, that person would not have been required to form a candidate committee for ten days, and would not have had to file a statement of organization for twenty days. *See* Mich. Comp. Laws §§ 169.221, 169.224. A serious candidate such as this who began campaigning in early March, formed a candidate committee as required by law after March 10th, and then timely filed a statement of organization in late March, would be completely barred from taking advantage of the State's May 8, 2020 accommodations—even though she fully complied with Michigan law, and may have demonstrated strong popular support through gathering 50% or more of the required signatures before May 8. The State acknowledges that such candidates may exist. ECF No. 55, PageID.783. Clearly, as Ms. Hawkins and these

examples illustrate, the March 10th deadline is not narrowly tailored to effectuate the State's interest in ensuring that candidates have a modicum of support before inclusion on the ballot.

The State had other options. For example, a requirement that candidates needed to demonstrate that they were making serious efforts to gather signatures or that they had obtained a certain percentage of their signatures by a certain date might possibly survive a strict scrutiny analysis, as it more closely tracks the statutory signature requirement and is clearly a measure that shows a modicum of public support at a particular point in time.[1] But the March 10th deadline as it is currently being enforced does not. Accordingly, Ms. Hawkins is likely to succeed on the merits of her claim.

### c. Other Injunction Factors

In the Court's April 20, 2020 Order, this Court already assessed the likelihood of irreparable harm to the interests of a substantially similar

---

[1] But tying a particular signature percentage requirement to the March 10 date would also have the problem of excluding serious candidates who were just ramping up in March, and worked extremely hard gathering signatures between the Governor's declaration of a state of emergency on March 10th and the Stay-At-Home Order that was issued on March 23rd. Even if such candidates had by then exceeded 50% of the number of signatures required at the time of the shut-down, and were on track to meet the full signature requirement by the original due date of April 21—they would be unqualified to appear on the ballot because of not meeting a retroactive signature percentage requirement, or the committee formation requirement, back on March 10th.

9

Plaintiff and weighed those harms against the harms likely to be incurred by the State and the public were the Court to grant injunctive relief. ECF No. 23, PageID.346-51. The Court adopts that analysis again here.

The Court recognizes that the State's interest in ensuring the orderly administration of elections weighs much more heavily this time around, as the Bureau of Elections, local clerks, and candidates have been operating under the modified ballot-access requirements and new deadlines since April 20, 2020. Permitting additional candidates to benefit from the 50% signature reduction, the May 8th extension, and electronic signature option may cause some disruption and inefficiencies at this late hour. At the same time, the evidence before the Court is that the number of additional candidates who would come forward as a result of an injunction may be low. According to the State, as of the extended filing deadline date of May 8, 2020, 151 candidates had filed nominating petitions with the Bureau of Elections. ECF No. 55, PageID.779. Of those 151 candidates, 17 filed more than 50% but fewer than 100% of the required signatures. *Id.* Of those 17, 16 had established their candidate committee by March 10th and qualified for relief. *Id.* This means that

10

exactly one candidate would be affected by this Order in that data set. Notably, at oral argument on May 18th, the State indicated that that statistic does not capture petitions filed with local clerks, or candidates that may have tried to file their petitions but were not allowed to leave their paperwork with the filing official because they did not meet the March 10th deadline. That statistic also does not include candidates who, like Ms. Hawkins, filed her petition on the original deadline date of April 21st, exceeded the statutory signature requirement, but who may nevertheless lose a place on the ballot due to signature challenges because she did not form her candidate committee by March 10th and is therefore ineligible for the relief afforded by the State's accommodations. That being said, the Court cannot give significant weight to such theoretical concerns, because the only statistics provided by the State offer little if any evidence that a disruptive tidal wave of new, previously-excluded candidates will materialize.

Considering all four factors on balance, the Court finds that they weigh in favor of granting injunctive relief. *See Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012).

### d. Remedy

Court intervention in this case was first made necessary by the State's failure to offer reasonable accommodations to candidates in light of the unprecedented restrictions on daily life—including signature gathering—mandated by the Governor's Stay-at-Home Orders. As the Court noted in its April 20, 2020 Order, other states acted with foresight in easing ballot-access restrictions before candidate signatures were due. ECF No. 23, PageID.352. Michigan did not.

The possibility that future challenges might be made to the March 10th deadline was first discussed at a hearing on May 7, 2020, and the Court strongly encouraged the State to address the issue when it formulated its May 8, 2020 accommodations so as to head-off future litigation. Unfortunately, the State did not, and here we are. The State now requests that this Court limit any injunctive relief it grants to Ms. Hawkins alone. ECF No. 55, PageID.772. The Court questions whether such limited relief would be in the public interest, however, because the history of this case suggests that, no sooner than the Court's order is posted, another candidate in substantially the same position as Ms. Hawkins will emerge from the ether and seek to intervene.

The Court, the State, the candidates, and the public would all benefit from certainty going forward and an end to this litigation. Accordingly, the Court will enjoin the State from excluding candidates from the accommodations offered by the State based on the March 10th deadline because the March 10th deadline is not narrowly tailored to accomplish a compelling state interest.

In light of this constitutional infirmity in the State's reasonable accommodation, it must adopt more effective measures to remedy the problem. While the Court in issuing an injunction normally includes mandatory terms intended serve as an adequate remedy, because this case involves state election law, the Court is acutely aware of the Sixth Circuit's recent holding that "the federal court cannot impose such specific manner-of-election requirements on a State without breaching the express delegation of authority in the Constitution." *Esshaki*, 2020 WL 2185553 at *2.

Nevertheless, in offering guidance to the State as it develops and selects measures that it must in order to comply with this injunction, the Court notes that an accommodation along the following lines would comply with the injunction:

- That any petitions filed, and any petitions that were attempted to be filed but were rejected, by May 8, 2020, and which contained at least 50% of the required number of signatures, shall be accepted for filing in accordance with the reasonable accommodations adopted by the State regardless of the candidate's compliance with the March 10th deadline.

- That because the March 10th deadline also operated to exclude any candidates who successfully gathered 50% or more of the required signatures by May 8, 2020, but elected not to file their petitions on that date because they did not meet the March 10th deadline, petitions of such candidates that were completed by May 8, 2020 shall be accepted for filing within two days of the date of this Order, that is, by no later than 5:00 p.m. on May 22, 2020.

Should the State choose to amend its reasonable accommodations in such a manner, they would comply with this injunction and pass the test of strict scrutiny. Of course, it lies within the State's authority and discretion to select any scheme of accommodation that is narrowly tailored to meet its compelling state interest, as this remedy is.

For all the reasons set out in the foregoing, the Motion for Preliminary Injunction (ECF No. 51) is hereby **GRANTED**.

## II. Motion to Intervene and Motion to File Sur-Reply

The Court finds that Ms. Maison's Motion to Intervene demonstrates that Ms. Maison shares significant common factual and legal issues with the other Plaintiffs in this case. Pursuant to Federal Rule of Civil Procedure 24(b)(1)(B), the Emergency Motion to Intervene (ECF No. 58) is **GRANTED**.

The State's Motion to File Sur-Reply (ECF No. 61) is **GRANTED**.

## III. Conclusion

For the reasons herein, the Motion for Preliminary Injunction (ECF No. 51) is **GRANTED**. The State is **HEREBY ENJOINED** from enforcing its ballot-access provisions such that candidates who did not file a statement of organization with the Federal Election Commission or establish a candidate committee under the Michigan Campaign Finance Act by March 10, 2020 are excluded from the State's May 8, 2020 accommodations. To effectuate this injunction, **IT IS ORDERED** that the State shall amend its reasonable accommodations in a manner of its own choosing that is consistent with reasoning set forth in this Order.

**IT IS FURTHER ORDERED** that Ms. Maison's Emergency Motion to Intervene (ECF No. 58) and the State's Motion to File Sur-Reply (ECF No. 61) are **GRANTED**.

**SO ORDERED.**

DATED this 20th day of May, 2020.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge
