UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ERIC ESSHAKI**,<br><br>Plaintiff,<br><br>**MATT SAVICH**, **DEANA BEARD**, and **SHAKIRA HAWKINS**,<br><br>Plaintiff-Intervenors,<br><br>vs.<br><br>**GRETCHEN WHITMER, et al.**,<br><br>Defendants. | 2:20-CV-10831-TGB<br><br>ORDER GRANTING MOTION FOR ATTORNEY FEES FOR PLAINTIFF-INTERVENOR MATT SAVICH (ECF NO. 73) |

    This case arose in the context of the COVID-19 pandemic and involved constitutional challenges to the qualification procedures for Michigan's primary election. After the primary election passed, the Court issued an order dismissing the case as moot but retaining jurisdiction solely for the purpose of evaluating any motions for attorney's fees. ECF No. 71. Plaintiff-Intervenor Matt Savich filed a timely Motion for Attorney Fees on September 11, 2020. ECF No. 73. For the reasons that follow, the motion is **GRANTED**.

## I.  BACKGROUND

This case began on March 31, 2020: Plaintiff Eric Esshaki filed a complaint for declaratory and injunctive relief under 42 U.S.C. § 1983, alleging that Governor Whitmer's COVID-19 stay-at-home orders would make it impossible for him to collect enough signatures before the April 21, 2020 deadline to appear on the August 4 primary ballot as a candidate for one of Michigan's federal congressional seats. ECF No. 1. He also moved for a temporary restraining order. ECF No. 2. Defendants filed a Response opposing the TRO on April 10, 2020. ECF No. 6.

Plaintiff-Intervenor Savich filed a motion to intervene four days later. ECF No. 11. He was seeking to stand for election as a 47th District Court Judge, and also faced the April 21, 2020 filing deadline for his requirement of 400 petition signatures. His counsel Michael Cafferty was present for a hearing held on April 15, 2020 that primarily concerned the TRO and was conducted by Plaintiff Esshaki's counsel, though Mr. Cafferty did speak briefly about his client's position on the issues and the number of signatures gathered by Savich thus far. Tr. 4/15/20, 41:10-42:17, ECF No. 32, PageID.496-97. Various amicus briefs were also filed in the interim. The Court granted the TRO, Savich's motion to intervene, and the motions to file amicus briefs on April 20, 2020. ECF No. 22. Based on the Court's order, the filing deadline was extended to May 8, 2020, the number of signatures required was reduced by 50%, and signatures could be collected through e-mail. *Id.*

Two days later, Defendants filed a limited motion for relief based on new evidence or a stay pending appeal. ECF No. 26. The Court held a hearing on this motion the next day, and invited Parties to submit declarations by noon on April 24, 2020 that would "assist the Court in deciding whether to grant the motion." Decl. of Dennis Donahue, ECF No. 35, PageID.539. Savich timely submitted such a declaration. ECF No. 31. On April 26, 2020, the Court denied Defendants' motion for relief and their request for a stay. ECF No. 37.

Defendants filed a motion on the same day in the Sixth Circuit for an emergency stay of this Court's Order. Case No. 20-1336, ECF No. 11. Savich filed a short response on April 27, 2020. *Id.* at ECF No. 17. On May 5, 2020, the Sixth Circuit issued an order vacating this Court's specific instructions regarding the filing deadline, signature requirement, and signature collection by e-mail, but upheld the injunction preventing the State "from enforcing the ballot-access provisions at issue unless the State provides some reasonable accommodations to aggrieved candidates." ECF No. 45, PageID.662. Functionally, this order "instruct[ed] the State to select its own adjustments so as to reduce the burden on ballot access . . . and thereby render the application of the ballot-access provisions constitutional under the circumstances." *Id.* at PageID.663.

The next day, this Court asked Defendants to submit their proposal for accommodations, which they did. ECF No. 38. Plaintiffs could submit

3

objections; Savich chose not to. The Court held a hearing on the proposal on May 7, 2020. Before the Court could issue an order, Defendants chose to implement the terms of this Court's original injunction: for eligible candidates, the filing deadline became May 8 and the number of signatures required was reduced by 50%. ECF No. 76, PageID.1047.

Savich timely submitted a total of 300 signatures, making him eligible to appear in the primary. He was eventually certified as a candidate and was on the primary ballot in August. ECF No. 73, PageID.946.

After the primary election, the Court dismissed the case but retained jurisdiction in order to evaluate any motions for attorney's fees. ECF No. 71. Savich subsequently filed such a motion. ECF No. 73.

## II.   STANDARD OF REVIEW

The prevailing party in an action under 42 U.S.C. § 1983 can recover attorney's fees. 42 U.S.C. § 1988(b). To qualify as a prevailing party, a party must receive "at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). The relief secured must "directly benefit" the plaintiff at the time of the judgment, generally by requiring the defendant to modify their behavior to the plaintiff's benefit. *Id*. This relief and the subsequent change in the legal relationship between the parties must also be "judicially sanctioned" in some way: a lawsuit that results in a voluntary change in the defendant's conduct, without any court order or other "judicial *imprimatur*," does not suffice.

4

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001).

Assuming a finding of prevailing party status, the actual award of fees is discretionary, and courts must determine what fee is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In the Sixth Circuit, courts are instructed to use the lodestar method to calculate a reasonable fee, which involves "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 433). "The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 435.

### III.   ANALYSIS

#### A. Plaintiff-Intervenor Savich is a "prevailing party"

The Court must first determine whether Plaintiff-Intervenor Savich is indeed a "prevailing party" such that he is entitled to recover attorney's fees under 42 U.S.C. § 1988. Savich argues that because the relief he sought was to be able to appear on the ballot, which he ultimately did, he qualifies. Defendants counter that Savich only obtained a preliminary injunction, making his relief "fleeting" such that he should not be found to be a prevailing party. ECF No. 76, PageID.1050-53.

To the extent Defendants argue that Savich did not receive relief at all on the merits of his claim, the Court disagrees: he was eventually able

5

to appear on the August 4 primary ballot, which was his goal in joining the lawsuit and petitioning the Court.

A closer question is whether that relief was "judicially sanctioned" in some way. The Sixth Circuit has indicated that the grant of a preliminary injunction *can* satisfy this part of the prevailing party inquiry, but does not always, and whether it suffices is a "contextual and case-specific inquiry." *McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010). *McQueary* contains a lengthy set of hypotheticals that indicate what factors might dictate whether a preliminary injunction could result in prevailing party-status and concludes by finding that the "preliminary" nature of the relief "will generally counsel against fees." *Id.* at 601. However, when an "immediately enforceable preliminary injunction" causes a defendant to modify its behavior to plaintiffs' benefit, and plaintiffs obtain "all of the relief they requested once the preliminary injunction served its purpose," they have met the requirements of prevailing party status.

Here, the relief in the preliminary injunction was all the relief that Savich requested, and in the course of events it ended up being essentially permanent: the Court found, and the Sixth Circuit agreed, that the State was enjoined from enforcing the ballot-access statute as written and needed to come up with some sort of substitute set of procedures given the exigent circumstances caused by the COVID-19 pandemic. As a result, the statutory deadline and signature

requirements were never enforced against Plaintiffs. The requirements that *were* eventually enforced represented not a spontaneous or voluntary change by the State, but its response to an order from two courts to provide Plaintiffs an alternative way to qualify for the primary election. It did so, and Plaintiffs who could satisfy those alternative requirements eventually appeared on the ballot. This is akin to the hypothetical in *McQueary* where "all that moots the case is court-ordered success and the passage of time." 614 F.3d at 599.

It is true that the Court's preliminary injunction was initially reversed in part, and that it was eventually vacated in full by the Sixth Circuit on the Defendants' motion. *See* Case No. 20-1336, ECF Nos. 21, 27. Defendants cite the Supreme Court and say that a preliminary injunction "that is reversed, dissolved, or otherwise undone by the final decision in the same case" cannot be the basis for the "material alteration" in legal positions that leads to prevailing party status, and that therefore Savich does not qualify. *Sole v. Wyner*, 551 U.S. 74, 83 (2007).

But the Sixth Circuit has indicated that *Sole's* specific factual context limits its applicability: the preliminary injunction there was issued after a "hasty" and "abbreviated" hearing and was eventually dissolved on the merits when the district court rejected its own initial reasoning. *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 539-40 (6th Cir. 2019). By contrast, here the preliminary injunction was

7

entered after a thorough (if time-constrained) consideration of the merits and likelihood of success. *See* Order Granting Motion for Preliminary Injunction, ECF No. 23, PageID.330-46. The eventual vacatur of the preliminary injunction was not on the merits: the election passed and the issues became moot, causing the Sixth Circuit to vacate the prior rulings under the *Munsingwear* doctrine. *See* Case No. 20-1336, ECF No. 27. Vacatur because of the passage of time "does not represent the kind of active, merits-based undoing the Supreme Court referred to in *Sole*." *Planned Parenthood*, 931 F.3d at 540. The Court does not find that these changes affect the ability of the preliminary injunction to confer prevailing party-status on Savich.

Briefly, Defendants' argument that Savich's relief was "fleeting" is also unavailing: "the magnitude of a party's obtained relief does not dictate the outcome of the prevailing-party inquiry." *Planned Parenthood*, 931 F.3d at 541 (citing *Binta B.*, 710 F.3d at 620). Defendants maintain that he did not obtain any "lasting change," but Savich's goal was never to permanently change Michigan elections law, only to obtain a one-time modification of that law to afford him relief in light of the pandemic. The change he sought did not need to "last" any longer than August 4, 2020 for him to achieve the relief he sought. The Court finds that Savich qualifies as a "prevailing party" such that he is eligible for an award of attorney's fees.

8

## B. Calculation of a reasonable fee award

Having determined that Savich is eligible to receive fees, the Court must provide a "concise but clear explanation of its reasons for the fee award." *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 628 (6th Cir. 2013) (quoting *Hensley*, 461 U.S. at 437). After performing the initial lodestar calculation, the Court is permitted to modify the award upon consideration of any relevant *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Barnes v. City of Cincinnati*, 401 F.3d 729, 745-46 (6th Cir. 2005) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 91 n. 5 (1989)).

Initially, Defendants argue that even if he is a prevailing party, Savich's fees should be eliminated or drastically reduced due to his intervenor status. Some courts follow a standard developed in the Ninth Circuit, which states that an intervenor should not receive a fee award "unless the intervenor plays a significant role in the litigation." *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1535 (9th Cir. 1985); *see also Coal. to Defend Affirmative Action v. Regents of Univ. of Michigan*, 719

F. Supp. 2d 795, 802 (E.D. Mich. 2010) (collecting cases from the Fourth, Seventh, Second, and Fifth Circuits applying the "significant-role standard"). The Sixth Circuit has not adopted this standard, however, and this Court declines to do so now, instead proceeding forward with the lodestar calculation.[1]

### i. Total hours expended

Savich has filed a request for a total of 79.15 hours of work. ECF No. 73-3, PageID.960. Work that cannot logically be connected to the relief obtained in this case has not been "reasonably expended" on the result. The Court therefore agrees with Defendants that Savich should only receive fees for hours expended up until May 8, the date that the State implemented its chosen remedy and he was able to meet the requirements to appear on the ballot. The total number of hours will be reduced by 24.7 hours (the time worked after May 8) to 54.45 hours.

Defendants also argue that some of the hours billed should not be included because of "vagueness and block billing." ECF No. 76, PageID.1061-62. The Court is conscious of the extreme time pressure

---

[1] Defendants cite to *Sierra Club v. Hamilton County Bd. Of County Commissioners* as an example of a case where the Sixth Circuit clearly placed great importance on the significant role the intervenor played in the resolution of the case. 504 F.3d 634, 643 (6th Cir. 2007). But the question before the Sixth Circuit there was whether the intervenor should be considered a prevailing party at all, which the Court has already resolved here. The *Sierra Club* Court did not draw any specific conclusions about the proper fee award to an intervenor.

under which much of this litigation occurred. Not finding any of the entries to be so vague as to potentially be misleading or severely duplicative, the Court declines to reduce the hours billed on this ground.

### ii. Reasonable hourly rate

To determine a reasonable hourly rate, courts generally look to the "prevailing market rate in the relevant community" for lawyers of similar skill and experience for the type of work at issue in the case. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 850 (6th Cir. 2013). Counsel requests an hourly fee of $400/hr. In support, he states that he has been a civil rights attorney for thirty-five years, and that the Economics of Law Practice Survey[2] 75th Percentile hourly billing rate for a civil rights litigator is $400/hr. ECF No. 73, PageID.951.

Defendants argue that the correct "field of practice" to base the rate on is election law (median rate $250/hr, 75th percentile rate $300/hr), not civil rights, and that counsel has not met his burden to show why he should receive the 75th percentile rate rather than the median rate. They also argue that a more appropriate basis to choose a rate is to calculate based on his length of practice (median rate $295/hr, 75th percentile rate

---

[2] The State Bar of Michigan's Economics of Law Practice is a publication that courts in this district routinely use to determine the reasonableness of requested fees. While Savich references the 2017 report in his motion, the Court will use figures from the 2020 report to avoid disparity between his award and the award to Plaintiff-Intervenor Shakira Hawkins. *See* 2020 Economics of Law Practice Attorney Income and Billing Rate Summary Report, https://perma.cc/MYA5-U44H.

$367/hr) or his geographic practice area of downtown Detroit (median rate $308/hr, 75th percentile rate $445/hr). ECF No. 76, PageID.1060-61.

The Court agrees with Savich that this is more properly construed to be a civil rights case. The legal questions centered on whether the Governor's orders created an unconstitutional burden on Plaintiffs. However, absent any specific justification as to why Counsel merits the 75th percentile fee, the Court will use median figures instead.[3] Considering the median billing rate for a civil rights practitioner ($305/hr), as well as the other median billing rates already listed that apply to Mr. Cafferty, the Court will use a billing rate of $303/hr as a reasonable hourly rate.

### iii. Lodestar calculation

The initial lodestar calculation of 54.45 hours times $303/hr results in a potential fee award of $16,498.35. The Court will finally determine whether the circumstances of this case, as evaluated through the *Johnson* factors, support any increase or reduction in this award.

Regarding the first three *Johnson* factors, the Court notes that the primary role Counsel Cafferty played in this litigation was to protect his client's rights. That is, of course, his job; it is only one part, however, of the function of being a "private attorney general" and more generally

---

[3] The primary argument for the higher rate is the length of time Mr. Cafferty has been in practice, but that is already taken into account through the "length of practice" average billing rate.

vindicating the public's rights that Congress imagined when it enacted § 1988. The bulk of the legal argument in this case, both in written briefs and at oral argument, was undertaken by Plaintiff Esshaki and by the American Civil Liberties Union of Michigan as amicus curiae. Given Savich's supporting, rather than leading, role in advocacy both in front of this Court and in front of the Sixth Circuit, the Court finds that a reduction of the overall fee award is warranted.

In determining how much to reduce the fee award, the Court notes that the proportional contributions made by Counsel for Savich in comparison to the other parties would merit a reduction of 75% or even 80%.[4] But regarding factor (7), the Court appreciates that Counsel conducted this case facing significant time pressure and several tight deadlines, which would weigh in favor of a higher fee award. Consequently, the Court finds that a reduction of 50% balances Savich's contributions with the need to appropriately recognize and reward his Counsel's advocacy under significant time constraints.

---

[4] In the litigation before this Court prior to May 8, Esshaki filed a total 106 pages of briefing and the ACLU filed 53, while Savich filed 30 (the bulk of which was his motion to intervene, which focused on the propriety of his intervention rather than the core legal issues in the case). Oral argument during the hearing on the TRO was primarily conducted by counsel for Esshaki. In appellate litigation before the Sixth Circuit, Esshaki filed a 23-page response and Savich filed a 9-page response to Defendants' motion.

Regarding factor (12), this award is roughly half that granted to Plaintiff-Intervenor Hawkins, which the Court finds appropriate given the circumstances of each case. *See* ECF No. 83.

The Court does not find that any of the other *Johnson* factors have significant bearing on this case. The final fee award is therefore $8,249.18.

## CONCLUSION

The Motion for Attorney Fees (ECF No. 73) is **GRANTED.** Defendant is ordered to pay $8,249.18.

DATED this 30th day of March, 2021.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge