UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ERIC ESSHAKI**,<br><br>Plaintiff,<br><br>**MATT SAVICH**, **DEANA BEARD**, and **SHAKIRA HAWKINS**,<br><br>Plaintiff-Intervenors,<br><br>vs.<br><br>**GRETCHEN WHITMER, et al.**,<br><br>Defendants. | 2:20-CV-10831-TGB<br><br>**ORDER GRANTING MOTION FOR ATTORNEY FEES FOR PLAINTIFF-INTERVENOR SHAKIRA L. HAWKINS** |

This case arose in the context of the COVID-19 pandemic and involved constitutional challenges to the qualification procedures for Michigan's primary election. After the primary election passed, the Court issued an order dismissing the case as moot but retaining jurisdiction solely for the purpose of evaluating any motions for attorney's fees. ECF No. 71. Plaintiff-Intervenor Shakira L. Hawkins filed a timely Motion for

1

Attorney Fees on September 16, 2020. ECF No. 75. For the reasons that follow, the motion is **GRANTED**.[1]

## I. BACKGROUND

This case began on March 31, 2020: Plaintiff Eric Esshaki filed a complaint for declaratory and injunctive relief under 42 U.S.C. § 1983, alleging that Governor Whitmer's COVID-19 stay-at-home orders would make it impossible for him to collect enough signatures before the April 21, 2020 deadline to appear on the August 4 primary ballot as a candidate for one of Michigan's federal congressional seats. ECF No. 1. He also moved for a temporary restraining order. ECF No. 2. Defendants filed a Response opposing the TRO on April 10, 2020. ECF No. 6.

The Court held a hearing held on April 15, 2020 regarding the TRO. Various amicus briefs and motions to intervene were also filed in the interim, including an amicus brief from the American Civil Liberties Union of Michigan that incorporated a declarant-witness statement from Hawkins. ECF No. 42-3. The Court granted the TRO, two motions to intervene, and the motions to file amicus briefs on April 20, 2020. ECF Nos. 22, 23. Based on the Court's order, the filing deadline was extended to May 8, 2020, the number of signatures required was reduced by 50%, and signatures could be collected through e-mail. *Id.* Any candidate who

---

[1] Some of the following background and analysis is repeated from the Court's Order in response to Plaintiff-Intervenor Savich's Motion for Attorney Fees. *See* ECF No. 81.

2

had filed a statement of organization under 52 U.S.C. § 30101 or established a candidate committee under Mich. Comp. Laws § 169.201 before March 10, 2020 (the date that Governor Whitmer first declared a state of emergency that curtailed in-person signature gathering activities) was eligible for these accommodations. ECF No. 23, PageID.359.

Two days later, Defendants filed a limited motion for relief based on new evidence or a stay pending appeal. ECF No. 26. The Court held a hearing on this motion the next day, and invited Parties to submit declarations by noon on April 24, 2020 that would "assist the Court in deciding whether to grant the motion." Decl. of Dennis Donahue, ECF No. 35, PageID.539. On April 26, 2020, the Court denied Defendants' motion for relief and their request for a stay. ECF No. 37.

Defendants filed a motion on the same day in the Sixth Circuit for an emergency stay of this Court's Order. Case No. 20-1336, ECF No. 11. On May 5, 2020, the Sixth Circuit issued an order vacating this Court's specific instructions regarding the filing deadline, signature requirement, and signature collection by e-mail, but upheld the injunction preventing the State "from enforcing the ballot-access provisions at issue unless the State provides some reasonable accommodations to aggrieved candidates." ECF No. 45, PageID.662. Functionally, this order "instruct[ed] the State to select its own adjustments so as to reduce the burden on ballot access . . . and thereby

3

render the application of the ballot-access provisions constitutional under the circumstances." *Id.* at PageID.663.

The next day, this Court asked Defendants to submit their proposal for accommodations, which they did. ECF No. 38. The Court held a hearing on the proposal on May 7, 2020. Before the Court could issue an order, Defendants chose to implement the terms of this Court's original injunction: for eligible candidates, the filing deadline became May 8 and the number of signatures required was reduced by 50%. ECF No. 76, PageID.1047.

On May 11, Hawkins filed a Motion to Intervene. ECF No. 47. She was seeking to stand for election as a 3rd Circuit Court Judge and did not qualify for the accommodations implemented by the state (even though she had obtained the requisite number of signatures by May 8) because she had not established a candidate committee by March 10. The Court asked for supplemental briefing as to (1) whether she had standing to bring her claim and (2) whether she personally made any expenditures as of March 10, 2020 that would have necessitated establishment of a candidate committee. Hawkins responded on May 12 and also filed a Motion for a TRO, arguing that her rights would be violated if Defendants continued to apply the March 10 cut-off for receiving accommodations to her, thereby preventing her from being certified for the August 4 primary election. ECF Nos. 49, 51.

4

The Court granted her motion to intervene the next day. ECF No. 52. After a hearing on May 18, the Court in an order on May 20 granted the TRO enjoining the state from enforcing the March 10 cut-off. ECF No. 64. The Court in its Order suggested a new set of accommodations that would meet the terms of the injunction, and the State chose to implement them rather than appeal. ECF No. 78, PageID.1080.

Under the new accommodations, Hawkins became eligible to file for certification. She was eventually certified as a candidate and appeared on the primary ballot in August. ECF No. 75, PageID.989.

After the primary election, the Court dismissed the case but retained jurisdiction in order to evaluate any motions for attorney's fees. ECF No. 71. Hawkins subsequently filed such a motion. ECF No. 75.

## II.   STANDARD OF REVIEW

The prevailing party in an action under 42 U.S.C. § 1983 can recover attorney's fees. 42 U.S.C. § 1988(b). To qualify as a prevailing party, a party must receive "at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). The relief secured must "directly benefit" the plaintiff at the time of the judgment, generally by requiring the defendant to modify their behavior to the plaintiff's benefit. *Id.* This relief and the subsequent change in the legal relationship between the parties must also be "judicially sanctioned" in some way: a lawsuit that results in a voluntary change in the defendant's conduct, without any court order or other "judicial *imprimatur*," does not suffice.

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001).

Assuming a finding of prevailing party status, the actual award of fees is discretionary, and courts must determine what fee is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In the Sixth Circuit, courts are instructed to use the lodestar method to calculate a reasonable fee, which involves "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 433). "The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 435.

### III.  ANALYSIS

**A. Plaintiff-Intervenor Hawkins is a "prevailing party"**

The Court must first determine whether Plaintiff-Intervenor Hawkins is indeed a "prevailing party" such that she is entitled to recover attorney's fees under 42 U.S.C. § 1988. Hawkins argues that because the relief she sought was to be able to appear on the ballot, which she ultimately did, she qualifies. ECF No. 75, PageID.988-91. Defendants largely repeat their arguments opposing Plaintiff-Intervenor Savich's Motion for Attorneys' Fees, stating that Hawkins only obtained a preliminary injunction and should not be found to be a prevailing party. ECF No. 78, PageID.1083-85.

To the extent Defendants argue that Hawkins did not receive relief at all on the merits of her claim, the Court disagrees: she was eventually able to appear on the August 4 primary ballot, which was her goal in joining the lawsuit and petitioning the Court.

A closer question is whether that relief was "judicially sanctioned" in some way. The Sixth Circuit has indicated that the grant of a preliminary injunction *can* satisfy this part of the prevailing party inquiry, but does not always, and whether it suffices is a "contextual and case-specific inquiry." *McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010). *McQueary* contains a lengthy set of hypotheticals that indicate what factors might dictate whether a preliminary injunction could result in prevailing party-status and concludes by finding that the "preliminary" nature of the relief "will generally counsel against fees." *Id.* at 601. However, when an "immediately enforceable preliminary injunction" causes a defendant to modify its behavior to plaintiffs' benefit, and plaintiffs obtain "all of the relief they requested once the preliminary injunction served its purpose," they have met the requirements of prevailing party status.

Here, the relief in the Court's second preliminary injunction was all the relief that Hawkins requested, and in the course of events it ended up being essentially permanent: the Court found that the State was enjoined from enforcing the March 10 cut-off deadline for eligibility in its previous ballot-access accommodations, and that it needed to modify that

7

requirement given the exigent circumstances caused by the COVID-19 pandemic and demonstrated by the facts of Hawkins' case. As a result, the March 10 cut-off was not enforced against Hawkins. This was not a spontaneous or voluntary change by the State, but rather its response to a court order indicating that its previous course of action was likely to be unconstitutional. This is akin to the hypothetical in *McQueary* where "all that moots the case is court-ordered success and the passage of time." 614 F.3d at 599.

Defendants also note that the Court's preliminary injunction was eventually vacated in full by the Sixth Circuit on the Defendants' motion.[2] *See* Case No. 20-1336, ECF Nos. 27. Defendants cite the Supreme Court and say that a preliminary injunction "that is reversed, dissolved, or otherwise undone by the final decision in the same case" cannot be the basis for the "material alteration" in legal positions that leads to prevailing party status, and that therefore Hawkins does not qualify. *Sole v. Wyner*, 551 U.S. 74, 83 (2007).

But the Sixth Circuit has indicated that *Sole's* specific factual context limits its applicability: the preliminary injunction there was issued after a "hasty" and "abbreviated" hearing and was eventually

---

[2] In fact, it is unclear whether the Sixth Circuit's Order refers to both injunctions entered by this Court, as it only instructs the Court to vacate an "injunction" singular. However, in their motion to the Sixth Circuit, Defendants referenced both injunctions, so the analysis will proceed on the assumption that they were both vacated.

dissolved on the merits when the district court rejected its own initial reasoning. *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 539-40 (6th Cir. 2019). By contrast, here the preliminary injunction was entered after a thorough (if time-constrained) consideration of the merits and likelihood of success. See Order Granting Motion for Preliminary Injunction, ECF No. 64, PageID.868-74. The eventual vacatur of the preliminary injunction was not on the merits: the election passed and the issues became moot, causing the Sixth Circuit to vacate the prior rulings under the *Munsingwear* doctrine. See Case No. 20-1336, ECF No. 27. Vacatur because of the passage of time "does not represent the kind of active, merits-based undoing the Supreme Court referred to in *Sole*." *Planned Parenthood*, 931 F.3d at 540. The Court does not find that these changes affect the ability of the preliminary injunction to confer prevailing party-status on Hawkins.

Briefly, Defendants' argument that Hawkins' relief was "fleeting" is also unavailing: "the magnitude of a party's obtained relief does not dictate the outcome of the prevailing-party inquiry." *Planned Parenthood*, 931 F.3d at 541 (citing *Binta B.*, 710 F.3d at 620). Defendants maintain that she did not obtain any "lasting change," but Hawkins' goal was never to permanently change Michigan elections law, only to obtain a one-time modification of that law to afford her relief in light of the pandemic. The change she sought did not need to "last" any longer than August 4, 2020 for her to achieve the relief she sought. The

9

Court finds that Hawkins qualifies as a "prevailing party" such that she is eligible for an award of attorney's fees.

### B. Calculation of a reasonable fee award

Having determined that Hawkins is eligible to receive fees, the Court must provide a "concise but clear explanation of its reasons for the fee award." *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 628 (6th Cir. 2013) (quoting *Hensley*, 461 U.S. at 437). After performing the initial lodestar calculation, the Court is permitted to modify the award upon consideration of any relevant *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Barnes v. City of Cincinnati*, 401 F.3d 729, 745-46 (6th Cir. 2005) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 91 n. 5 (1989)).

Initially, Defendants argue that even if she is a prevailing party, Hawkins' fees should be eliminated or drastically reduced due to her intervenor status. Some courts follow a standard developed in the Ninth Circuit, which states that an intervenor should not receive a fee award "unless the intervenor plays a significant role in the litigation." *Grove v.*

10

*Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1535 (9th Cir. 1985); *see also Coal. to Defend Affirmative Action v. Regents of Univ. of Michigan*, 719 F. Supp. 2d 795, 802 (E.D. Mich. 2010) (collecting cases from the Fourth, Seventh, Second, and Fifth Circuits applying the "significant-role standard"). The Sixth Circuit has not adopted this standard, however, and this Court declines to do so now, instead proceeding forward with the lodestar calculation.[3]

### i.   Total hours expended

Hawkins has filed a request for a total of 70.2 hours of work. ECF No. 73-3, PageID.960. Work that cannot logically be connected to the relief obtained in this case has not been "reasonably expended" on the result. The Court therefore finds that Hawkins should only receive fees for hours expended up until May 20, the date that the State implemented the Court's suggested remedy and she was able to meet the requirements to appear on the ballot. The total number of hours will be reduced by 4 hours (the time worked after May 20) to 66.2 hours.

---

[3] Defendants cite to *Sierra Club v. Hamilton County Bd. Of County Commissioners* as an example of a case where the Sixth Circuit clearly placed great importance on the significant role the intervenor played in the resolution of the case. 504 F.3d 634, 643 (6th Cir. 2007). But the question before the Sixth Circuit there was whether the intervenor should be considered a prevailing party at all, which the Court has already resolved here. The *Sierra Club* Court did not draw any specific conclusions about the proper fee award to an intervenor.

### ii. Reasonable hourly rate

To determine a reasonable hourly rate, courts generally look to the "prevailing market rate in the relevant community" for lawyers of similar skill and experience for the type of work at issue in the case. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 850 (6th Cir. 2013). Counsel Saura Sahu requests an hourly fee of $450/hr. In support, he states that he has been a civil rights attorney for twenty years, that he is in the top 1% of lawyers in the state, and that this is his regular billing rate. ECF No. 75, PageID.992-93. He also cites the 95th percentile rates from the Economics of Law Practice Survey[4] to indicate that his $450/hr rate is lower than other similarly situated litigators. ECF No. 75, PageID.994, 1031. Counsel also requests an hourly fee of $125/hr for Calvin Hart, a summer associate who worked a total of 9.8 hours on the case. In support, he indicates that this is his firm's regular rate for summer associates and cites to two cases from our circuit which awarded fees at rates of $120/hr and $130/hr to summer associates. *Id.* at PageID.994-95.

Defendants argue that the correct "field of practice" to base the rate on is election law, not civil rights, and that counsel has not met his burden to show why he should receive 75th or 95th percentile rates rather than the median rate. ECF No. 78, PageID.1090-91. They argue that the

---

[4] The State Bar of Michigan's Economics of Law Practice is a publication that courts in this district routinely use to determine the reasonableness of requested fees. *See* 2020 Economics of Law Practice Attorney Income and Billing Rate Summary Report, https://perma.cc/MYA5-U44H.

median rates for Ann Arbor firms ($300/hr), civil rights lawyers ($305/hr), civil litigators ($300/hr), and attorneys with 16-25 years of practice ($300/hr) all indicate that a more appropriate fee is between $300-400/hr. ECF No. 75, PageID.1031. Defendants do not dispute the $125/hr rate for Hart. ECF No. 78, PageID.1091 at n.2.

The Court agrees with Hawkins that this is more properly construed to be a civil rights case. The legal questions centered on whether the Governor's orders created an unconstitutional burden on Plaintiff-Intervenor Hawkins and other similarly situated individuals. However, absent any specific justification as to why Counsel merits the 75th percentile fee, the Court will use median figures instead. Considering the median billing rates listed that apply to Mr. Sahu, the Court will use a billing rate of $300/hr as a reasonable hourly rate.

### iii. Lodestar calculation

The initial lodestar calculation of 9.8 hours times $125/hr plus 56.4 hours times $300/hr results in a potential fee award of $18,145. The Court will finally determine whether the circumstances of this case, as evaluated through the *Johnson* factors, support any increase or reduction in this award.

Regarding the first three *Johnson* factors, the Court notes that the facts here are different than those of Plaintiff-Intervenor Savich. While Savich played only a minor role in supporting lead Plaintiff Esshaki's legal arguments, after the State's initial accommodations went into effect

13

Hawkins was the only Plaintiff raising the issue of how the March 10 cut-off would infringe on her constitutional rights. She was not, however, the first person to voice a concern that the March 10 cut-off was problematic: this issue was raised by multiple amici prior to and after the first TRO hearing. *See, e.g.* Br. of Amicus Curiae ACLU of Michigan, ECF No. 42, PageID.611-12. Recognizing that Hawkins played a significant but ultimately shared role in educating the Court on this issue and vindicating the rights of others, the Court finds it appropriate to reduce the fee award by 15% to $15,423.25.

In determining how much to reduce the fee award, the Court notes that the proportional contributions made by Counsel Sahu could reasonably merit a reduction of closer to 25%.[5] But regarding factor (7), the Court appreciates that Counsel conducted this case facing significant time pressure and several tight deadlines, which would weigh in favor of a higher fee award. Consequently, the Court finds that a reduction of 15% balances Hawkins' proportional contributions with the need to appropriately recognize and reward her Counsel's advocacy under significant time constraints.

---

[5] Hawkins joined at a late stage of the litigation, ultimately filing 78 pages of briefing and participating in one oral argument. Prior plaintiffs and amici submitted well over 300 pages of briefing and participated in an initial TRO hearing as well as proceedings before the Sixth Circuit.

Regarding factor (12), this award is roughly twice that granted to Plaintiff-Intervenor Savich, which the Court finds appropriate given the circumstances of each case. *See* ECF No. 81.

The Court does not find that any of the other *Johnson* factors have significant bearing on this case. The final fee award is therefore $15,423.25.

## CONCLUSION

The Motion for Attorney Fees (ECF No. 75) is **GRANTED.** Defendant is ordered to pay $15,423.25.

DATED this 30th day of March, 2021.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge